# T. DUDLEY RIGGS *vs.* GEORGE C. WINTERODE
## ET AL.

*Injunction—Hearing on Bill and Answer—Jurisdiction of County Com-
missioners to Open and Close Highways—Variance Between New
Road as Described in Published Notice and as Located—Appoint-
ment of Examiners in Opening and Closing Roads—Discontinuance
of Highways.*

When the application for an injunction is heard upon bill and answer, the
allegations of the answer, so far as responsive to the bill, are to be taken
as true, and if they deny the equity of the bill no preliminary injunction
should be granted.

But if, upon such hearing, the answer sets up new matter by way of avoid-
ance, which must be established by evidence, it is within the discre-
tion of the Court, according to the exigencies of the case, to grant or
refuse a preliminary injunction.

The defendant, the owner of a farm in Baltimore County through the
middle of which ran a public road, published a notice that application
would be made to the County Commissioners to close that road and
open two new ones, also on defendant's farm, as substitutes. The ap-
plication was made and no counter petitions were filed. The commis-
sioners visited the locality, and they signed an agreement to the effect
that upon the opening of the two new roads as applied for, and upon
their being graded and bridged by the defendant, to the satisfaction of
the Roads Engineer, and upon defendant's executing to the commis-
sioners a deed thereof, the said two roads should be accepted as county
roads, and that the old road would be closed at the end of a year from
such acceptance and be conveyed to the defendant. *Held*, that the
County Commissioners were authorized to make this agreement under
Code, Art. 25, sec. 12 and under the Act of 1900, ch. 685, relating to
higways in Baltimore County.

*Held*, further, that the agreement was not invalidated because it directed
that the new road should be constructed, graded and bridged to the
satisfaction of the Roads Engineer, since Code, Art. 25, sec. 1, provides
that the commissioners may commit the whole matter of grading and
constructing public roads to civil engineers. The agreement, or order,
was not a delegation of the powers vested in the County Commission-
ers, but simply the selection of a person to see that the work was prop-
erly done.

The Act of 1900, ch. 685, requires notice to be given by publication of a
proposed alteration, etc., of roads in Baltimore County. In this case

the published notice of the change of a road, by the opening of two new ones in the place of it, described one of the new roads as beginning at a certain point and running northerly about 1300 feet. This road as finally located ran about five degrees west of due north, and was 177 feet short of the described length. The other road was described in the notice as running south on the division line between defendant's land and that of an adjoining owner about 1100 feet, and then easterly about 1600 feet to a railway station. The road as located followed the division line, which did not run due south, and both of the courses were about 200 feet longer than as described, and the road connected with another which led to the station. *Held*, that these slight variations between the roads as described in the notice and as actually constructed do not affect the jurisdiction of the commissioners to make the alteration.

When County Commissioners determine that the public convenience requires an old road to be closed and new roads to be opened as substitutes therefor, they are authorized to make the change without first appointing examiners, since under Code, Art. 25, sec. 86, examiners are to be appointed only when the commissioners deem it expedient.

After the publication of a notice as required by statute relating to the closing of an old road and the opening of new ones, all of them within the limits of defendant's farm, the County Commissioners made an agreement with the defendant that when he graded the new roads and conveyed them to the county, the old road should be closed after a certain time, and conveyed to him. Defendant complied with the conditions on his part to be performed. Jurisdiction to close roads was conferred upon the commissioners by the Act of 1900, ch. 685. *Held*, that the closing of the old road was not invalidated by the fact that the commissioners "agreed" that it should be closed in this manner instead of passing an order to that effect; and the plaintiffs in this case are not entitled to an injunction restraining the defendant from closing the old road.

Appeal from the Circuit Court for Baltimore County (Burke and Van Bibber, JJ.)

The cause was argued before McSherry, C. J., Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*D. G. McIntosh* and *Jno. I. Yellott*, for the appellants.

*W. Irvine Cross* and *Redmond C. Stewart* (with whom were *Frank I. Duncan* and *Oscar Wolff* on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

This is an appeal from an order granting a preliminary injunction against the appellants at the instance of the appellees. The application for an injunction was set for hearing upon bill and answers. There can be no doubt that as the answers were filed before the application for the injunction was heard, they must be considered, and if it be found that they deny the equity of the bill in such manner as would authorize the dissolution on motion to dissolve, the injunction ought not to have been granted. So far as they are responsive to the bill they are taken as true, *Miller's Eq. Pro.*, sec. 578, and cases cited, but new matter set up by way of avoidance does not avail to prevent the issuing of a preliminary injunction. *Dougherty v. Piet*, 52 Md. 429; *Mayor, &c., of Baltimore v. Keyser*, 72 Md. 115. Although perhaps not necessary to refer to other authorities, the same rules are announced in 10 *Ency. of Pl. and Pr.*, 1000–1002, where many cases are cited. It may be well to say in this connection that there may be cases in which the new matter set up in the answer is such as would justify the Court in refusing to grant an injunction at once, unless that be necessary in order to preserve the rights of the plaintiff, in case he finally establishes them. When the Court is satisfied that the plaintiff will not suffer by not having the injunction issue at once, and testimony can be taken in a reasonable time, if the new matter be of a character that would ultimately require the dissolution of the injunction, if proven, it would be useless to compel the Judge to issue a preliminary injunction. Some discretion must be allowed him in such cases. On the other hand, when the answer is not responsive to the bill, but relies entirely upon new matter which can only be established, if at all, by evidence, and the status of the property, or other rights involved may be changed, it is proper to grant a preliminary injunction, if the allegations of the bill make a proper case for that relief. Under the view we take of this case this question is not very material, but as it was argued at some length we deemed it proper to dispose of it before entering upon a discussion of the merits of the case.

The bill alleges that the plaintiffs are taxpayers. The answer of Mr. and Mrs. Riggs (which is the only one we will refer to) admits that Mr. Winterode is a taxpayer, but alleges that they have caused the records to be examined and have failed to discover that Mr. and Mrs. McLean are, and on that information they deny that they are. As a copy of the deed to Mrs. McLean is filed and it may be that the property had not been transferred on the tax books, but she was in fact a taxpayer as alleged in the bill, we will assume that allegation to be sufficiently established. The object of the proceedings is, briefly stated, to prevent the surrender or abandonment by the county authorities of a road which formerly ran through the farm of Riggs, claimed to be a county road, to prohibit the opening up or recognition of two other roads through the Riggs farm in lieu thereof, to stop the further expenditure of money collected from the taxpayers on those two roads, and to require Riggs to remove the fences built by him on the old road and to restore it to its former condition. The case was very fully and ably argued by the respective solicitors, and many questions were discussed, but those most relied on by the plaintiffs (the appellees) are stated in their brief to be;

*First.* That the County Commissioners had no power to enter into the agreement of September 11th, 1901, filed as an exhibit with the bill—that it was *ultra vires* and acts done in pursuance thereof are void.

*Second.* That if that agreement was a valid exercise of the powers of the County Commissioners, the roads described in the notice, published as the first step in the proceedings, have never been laid out, but the two new roads are entirely different and no notice, as prescribed by law, has ever been given for them as actually constructed.

*Third.* That the old road could not be closed without the appointment of examiners.

*Fourth.* That if that be not necessary, the proceedings taken did not operate to legally close the old road.

After giving the notice required by law, nine persons, including Mr. Riggs, described as "taxable inhabitants of Balti-

more County" applied to the County Commissioners "to close a portion of an old road and in lieu thereof to open two new roads, as follows, because the public convenience requires the same, viz." They are then described in the petition and will be more particularly hereinafter referred to. The members of the Board of County Commissioners visited the property of Mr. Riggs and afterwards signed what is called an "Agreement." As that will be set out in full in the opinion to be filed at this term in the case of *Jenkins and others* v. *Riggs and others*, it will not be necessary to do so again, but it is contended by the appellees that the commissioners had no authority to make it. We cannot, however, agree with that contention. By sec. 12 of Art. 25 of the Code of Public General Laws County Commissioners "have power to open, alter or close any public road or roads in their respective counties." The Local Law, Act of 1900, ch. 685, does not change that, but on the contrary sec. 205 of that Act is in the exact words of sec. 83 of Art. 25—"All applications for opening, altering or closing roads shall be by petition to the County Commissioners." When, then, "a notice as required by law" was published, as admitted in the bill, a petition for the closing of the old road and the opening of the new roads was filed, and fifteen days had elapsed after the expiration of the thirty days notice required by sec. 206 of Act of 1900; and no counter petitions were presented, the case was ready for the action of the County Commissioners, as contemplated by the Local Laws of Baltimore County. The road to be closed and those to be opened were wholly on the lands of Mr. Riggs, and the commissioners had gone in person on his property. We can see no objection to their agreeing "that upon the opening of the two new roads as applied for and upon their being constructed, graded and bridged to the satisfaction of the Roads Engineer," and upon the execution and delivery to the board of a deed the said two roads shall be accepted as county roads, and that the old road be closed at the end of a year from such acceptance and be reconveyed to Mr. Riggs." They could not with due regard to the public interests close the old until

the new road was ready for use, and it was therefore a wise provision. The plaintiffs and other taxpayers surely could not object to the requirement that the new roads should be constructed, graded and bridged, or that they be conveyed by a proper deed for the use of the public. The construction of the two new roads would necessarily occupy a considerable time, and it would seem to be difficult for the County Commissioners ever to make an arrangement of this kind, however desirable it might be for the public, if they could not bind themselves in the way adopted in this instance.

The fact that the roads were to be constructed, graded and bridged to the satisfaction of the Roads Engineer cannot invalidate the action of the commissioners. Sec. 1 of Art. 25 provides that the commissioners "may commit the whole matter of grading and constructing public roads, and the repairs thereof, and the construction and repairs of public bridges, to the charge of competent and scientifically educated civil engineers, who shall direct and manage all such public works under the immediate control of said County Commissioners." Sec. 196 of the Act of 1900 provides that the Roads Engineer shall be "a man having the degree of civil engineer, and experienced in bridge and road building." It would therefore seem to be exactly in accord with the policy of our laws to require such work, as is referred to in this agreement, to be to the satisfaction of the Roads Engineer. If he is of the character of man contemplated by the Local Law, it is not likely the commissioners could select anyone better qualified to determine whether the work was properly done. It was not a delegation of the powers vested in the commissioners to another person, but it was simply the selection of one presumably competent to see that the work was properly done. County Commissioners must do many things which they have control over through agents, and in this instance they were only doing what the Public General Laws expressly authorized and what the Local Law in no way forbids, when they required the work to be done to the satisfaction of the Roads Engineer.

It might perhaps have been better to have had a more formal agreement—signed by Mr. Riggs, as well as the commissioners—but the failure to do that cannot of itself authorize a Court of equity to now interfere. The petition had been filed by Riggs and others and the agreement was the result of that. If Mr. Riggs had not done his part within a reasonable time, the board could have revoked its action, and until he did the old road was still to be kept open. The agreement was dated September 11th, 1901, and on the 14th day of October, 1902, a deed was delivered to the County Commissioners and an order passed by the commissioners accepting the road described in the deed as a public road, according to the provisions of sec. 202 of ch. 685 of the Act of 1900, "it appearing to the satisfaction of said County Commissioners that said road is not less than thirty (30) feet in width and duly and properly graded and that the same is necessary and convenient for public use." The deed having been executed, delivered and accepted, there can be no doubt that the title to the land included in it was as securely vested in the county as it could be by any other means. It is of no consequence whether it was technically an acceptance under sec. 202 of the Act of 1900, as the order states, or under the other provisions. When the notice is given, petition is filed, and other provisions complied with, but no counter petitions are presented or objections filed, and the commissioners are of the opinion that the road is necessary and convenient for the public use, what else is necessary if the owners are willing to make a deed? When the County Commissioners deem it expedient that a road be opened, they are expressly authorized to contract with the owners of the land, sec. 208. The recitals in the agreement of September 11th, 1901, conclusively show that they thought it was expedient, although it does not use that precise language. So without further consideration of that point, we think the agreement was not *ultra vires*, but was within the powers conferred upon the commissioners.

2. Were the roads so different from those described in the notice as to require us to hold that those described were not

laid out? The upper road is described in the notice as "beginning at the point first mentioned and running with a northerly course about thirteen hundred feet through and across the property of the said Riggs; thence easterly about one thousand feet until it meets the road known as the 'Red House Road' at the southeast corner of Mr. Riggs' ore bank." The deed describes that road as running north 5 degrees 50 minutes west 1,122½ feet; thence by courses and distances therein given—the total distance being 1,026 feet, the course being in a northeasterly direction. It is contended by the appellees that the variance between the proposed road as described in the notice, and that actually adopted, makes the action of the commissioners null and void. Authorities are cited to show that "northerly" means "due north," and therefore when the first line of the road was laid out, as north five degrees 50 minutes west, it was a fatal variance. But we do not understand the law so to be as applicable to a case such as this. When a line in a deed, or other instrument, intending to give an accurate description of the property is described as running "northerly" without anything else to govern it, if it be not construed to mean "due north," there would be no possible way of locating it, but when, as here, persons intend to apply for the opening of a road, it could not have been intended to necessarily run due north. Section 206 of the Local Law, in speaking of the notice, says, "setting forth as near as may the length and location of said road," thus plainly indicating that the road need not be precisely and accurately described in the notice. The law throughout contemplates the ultimate location of a road which may not be definitely and accuratetly described in the notice. If the commissioners contract with the owners of the land, they shall cause a plat to be made by the Roads' Engineer and filed and recorded, "which said plat shall be referred to in and shall be a part of said deed or deeds, and the lands so conveyed shall be and become thenceforth the property of the county, etc." It does not say that the land described in the notice shall be so conveyed, etc. If examiners are appointed

and they determine in favor of opening, closing or altering a road, "they shall proceed to locate the same in such manner as will, in their judgment, best promote the public convenience." Section 211. As was said of a notice under an Act investing the Mayor and City Council of Baltimore with power to provide for laying out, opening, extending, widening, straightening or closing up, in whole or in part, any street, etc. "It would be fatal to the objects for which these powers are delegated by the General Assembly of the State, to require all the notices of the application for ordinances to carry into effect these powers to specify with technical precision the objects for which the applications will be made. Such particularity would embarrass all the subsequent proceedings dependent on the notices, and render the rights acquired under them so precarious as to destroy all confidence in the local legislation of the city." *Baltimore* v. *Bouldin,* 23 Md. 370. That case had been approved in a number of cases since. Of course the location of a road may so far depart from the notice as to invalidate the proceedings, as this Court held in *Baltimore* v. *Grand Lodge I. O. O. F.,* 44 Md. 436, where it was held that "an ordinance to condemn and open Lexington street eastward from *Gay street,* so as to make it intersect the present western terminus of Douglas street, and to change the name of Douglas street to Lexington street," was not authorized under a notice that application would be made "to open and condemn Lexington street *from Holliday* to Douglas street." Manifestly that could not be for the reasons given in that case, that "The purpose sought to be attained by it undoubtedly was to give property holders, whose interests were to be affected by assessments of benefits and damages, notice of what was proposed to be done; and thus secure to them the opportunity to promote or resist the contemplated improvement by the appropriate expression of their views for or against it before the City Council."

In this case we cannot perceive how the public could possibly be injured by locating the first part of the road about six degrees west of due north, instead of due north, when in either

event it would be on the land of Riggs and upon the land of no other person. Nor do we understand how the fact that that line is 177½ feet shorter can possibly injuriously affect the public.

The lower road, as proposed in the notice, was described as "running south on the division line between the land of S. M. Shoemaker and T. Dudley Riggs about eleven hundred feet, until it crosses the branch, then taking an easterly course about sixteen hundred feet to Stevenson Station." The line first mentioned could not be due south if it was to be on the division line mentioned, if the plat filed is correct, for that line is not *due* south, and the reference to the division line gave the public much more accurate information than the course could possibly do. The distance is 1,328 feet, instead of about 1,100, and the other lines are 1,522½ feet, instead of about 1,600. But what we have said above for the most part applies to this road. It is true it does not run directly to what is designated on the plat as the "Old Station," but it does go to another county road on which the "Old Station" is located, and could not go to the station, according to the plat, without crossing a lot conveyed to the Northern Central Railway Company on March 21st, 1901, before these proceedings were commenced. In short, the public can now go from A to C (on the plat filed) in 2,794 feet instead of 3,360 by the old road, and from A to K in 2,148 feet instead of 4,006 feet by the old road, or from A to E in 2,850 instead of 2,480 feet as formerly. If the railway company has built a new depot, as stated at the argument, and shown on the plat, the distance from A to it will be materially shorter if the railway company opens up a road to the county road.

We have thus at some length referred to the opening of the new roads, and it seems to us to be beyond all controversy that the commissioners had the right to accept them if they deemed them necessary and convenient for public use. That they did so deem them is not only shown by their declarations of record, but by all their acts in the premises. The county now has the title to the land included in the roads vested in

it, and not only the county money, but that of Mr. Riggs has been expended on them, after full opportunity for the plaintiffs and all other taxpayers to object, if they had any grounds for so doing, for not only was the notice published, but the building of the roads must necessarily have shown where they were to go. But notwithstanding this, the bill was filed in this case on the 15th of August, 1904, nearly two years after the deed to the county was delivered. Under these circumstances it would seem clear that a Court of equity ought not to interfere with the opening of the two roads.

3. But it is contended that the old road was not lawfully closed. Much that we have said applies to this branch of the case, but it is urged that it could not be closed without the appointment of examiners. The statute itself, we think, disposes of that contention. We have already seen that it authorizes the opening, altering or closing of roads and sec. 208 of the Local Laws is similar to sec. 86 of Art. 25 of the Public General Laws. It provides that "whenever the County Commissioners *shall deem it expedient* that examiners shall be appointed to view the grounds for the purpose of opening, altering or closing a road, they shall appoint three persons as examiners," &c. Clearly by that provision examiners are only to be appointed when the County Commissioners deem it expedient so to do, and unless they so deem it, by clear implication they are neither required nor expected to appoint examiners. If the commissioners were satisfied that the public convenience required the old road to be closed, and new roads to be opened, why should they appoint examiners when no one questioned the propriety or necessity for the change? Nine taxpayers had requested it, they had viewed the property themselves, and no one, so far as the record discloses, made objection to it. It would be a very unusual proceeding to appoint examiners under such circumstances, and even if it were usual it would not be cause for such relief as is here sought unless it was required, which was not the case.

4. We have already made sufficient reference to the agreement to show that we are of the opinion that was not beyond

the powers of the commissioners to make. The consideration for the land and work done by Riggs on the new roads was the closing of the old    It would be impossible to restore the appellants' property to the same condition it was in without great cost to the county and much inconvenience, and perhaps loss, to Mr. Riggs.   Nothing has been shown which can be fairly said to reflect upon the good faith of the commissioners.   In the case of *Smith* v. *Goldsborough*, 80 Md. 49, we had occasion to consider many objections that had been raised against the proceedings for the opening of a road, and held that such as were pointed out were at most mere irregularities and did not affect the jurisdiction of the County Commissioners over the opening of the road in question.   In this case if there could have been any question about the right to open the two new roads, on account of the description of them in the notice, it was cured by the deed to the county, as no other parties than the county and Riggs could be affected by the difference between the roads as described in the notice and those actually opened up.   Mr. Riggs could have dedicated and the County Commissioners could have accepted these two roads, if in the opinion of the latter they were necessary and convenient for public use, as is expressly authorized in sec. 202 of Local Laws.   Whether or not it can technically be called a dedication is immaterial.   The county got the roads with fourteen hundred dollars of work on them by Riggs, and by a title that Riggs certainly cannot question, unless perhaps in the event of the old road being opened up again.

In return for all this the commissioners agree to close up the old road.   That was agreed upon after the notice was given, and it is not pretended that the old road was not properly described in the notice or in the petition.   If the "Agreement" had taken the form of a regular "Order" it is difficult to understand why it would not have been a valid exercise of the powers vested in the commissioners for closing roads, and why it should be deemed invalid because the commissioners, in answer to the petition of the nine taxable inhabitants of Baltimore County "agreed," instead of "ordered" that the old

road should be closed (after the time had elapsed for filing counter petitions and none were filed) is equally difficult to understand. We have alseady pointed out a reason for providing that the old road should be closed in the future—to have the new roads ready for the use of the public. In 15 *Am. & Eng. Ency. of Law*, 402, the subject is thus spoken of, "After the vacation of a highway it is as if it had never existed, and it can be renewed only in the same way in which highways may be established in other cases. *The discontinuance is complete*, it seems, upon the making of the adjudication without an actual shutting up of the road or an exclusion of travel therefrom, but when a new highway is to be laid out to take the place of an old highway, the latter, it has been decided, cannot be fenced up by the owner, of the land until the new highway is made fit for travel." That is only fair to the public and was doubtless the reason, as we have said, that the commissioners put their adjudication in the form they did.

More than a year afterwards the County Commissioners made a deed to Mr. Riggs, conveying their interest in that strip of land, and described it as "being the portion of said 'Green Spring Valley Road,' formerly used as a public road, but recently closed under proceedings heretofore had in the office of said County Commissioners for that purpose." Whether the deed as such, was necessary, or did convey anything to Riggs is immaterial, for the purpose of this case, but it is clear that if it be conceded that no land was actually conveyed by the deed, it was evidence in the most solemn form of the commissioners being satisfied that what Riggs was to do on the new roads had been done and therefore their adjudication of September 11th, 1901, took effect as therein provided. That in the meantime one member of the Board of County Commissioners had gone out of office and another had taken his place cannot in any sense affect the question, unless it be said that it strengthens the position of Riggs by reason of the fact that a fourth person representing the county approved of the arrangement. County Commissioners are corporate bodies and a change of the members of the board

cannot defeat the rights of parties dealing with them.   In this case all that the new member was called upon to do at the time the deed was made was to see that the terms of the agreement were complied with as we do not find any allegation that objections were made to the proceedings or to the roads between September 11th, 1901, and October 15th, 1902.   Mr. Riggs owned the land on both sides of the old road, and it is not suggested that either of the plaintiffs had any interest in the road other than what the other property owners in that vicinity have.   It has been held in some cases that under these circumstances an injunction will not lie to restrain the vacation of a highway (see 15 *Ency. of Law*, 402 and notes), but we will not pass on that question, as we are satisfied from what is admitted in the bill and exhibits that the appellees are not entitled to relief and the injunction should not have been granted.   The answer denies many of the allegations in the bill, but under our construction of the proceedings before and by the County Commissioners referred to in the bill and exhibits we are of the opinion that the appellees are not entitled to relief and it would be useless to remand the cause.   We will therefore dismiss the bill.

The main questions involved in this case are also disposed of in that of *Jenkins et al.* v. *Riggs et al., ante* p. 427, the opinion in which will be filed at the same time this is.   As the allegation of fraud in obtaining signatures to the petition in only incidentally mentioned in this bill and is disposed of in *Jenkins* v. *Riggs*, we will not make further mention of it.

> *Order reversed and bill dismissed, the*
> *appellee to pay the costs.*