660 A.2d 951

HIGH RIDGE ASSOCIATION, INC.

v.

COUNTY COMMISSIONERS OF CARROLL COUNTY, MARYLAND.

No. 1388, Sept. Term, 1994.

Court of Special Appeals of Maryland.

June 29, 1995.

David K. Bowersox (Hoffman, Comfort, Galloway & Offutt, on the brief), Westminster, for appellant.

John T. Maguire, III (Hollman, Hughes, Finch and Maguire, Chartered, on the brief), Westminster, Aaron and Ruth Green.

Argued before CATHELL, DAVIS and HOLLANDER, JJ.

CATHELL, Judge.

Appellant, High Ridge Association, Inc., appeals the judgment of the Circuit Court for Carroll County (Burns, J., presiding), which found in favor of appellee, County Commissioners of Carroll County,[1] on its petition for condemnation of a portion of appellant's real property. Appellant challenges the public nature of the use to which the condemned land will be put and proffers the following questions for our review:

I.   Was the Commissioners' decision to condemn an unconstitutional, unlawful grant of a private remedy for the sole benefit and economic advantage of a single property owner, and not for a public purpose or benefit?

II.  Was High Ridge Drive, as originally designed and approved, deliberately designed to terminate within the subdivision's property and not to extend into the subdivision's pedestrian open space area to the boundary of Mr. Green's property?

III. Was the Commissioners' decision to condemn unconstitutional due to lack of any necessity to condemn?

High Ridge Drive runs in an easterly direction through High Ridge Estates and terminates fifteen feet from the common boundary of the subdivision and property now owned by one Aaron Green and his wife, Ruth. The property sought to be condemned is a strip of land fifty feet wide extending from High Ridge Drive fifteen feet to the Greens' property. This strip now serves as a pedestrian right of way. Condemnation proceedings were instituted pursuant to the Greens' recent proposal to develop their property with residential lots,

---

1. We shall sometimes hereafter refer to the County Commissioners as the County.

which, if condemnation were successful, would be situate along the proposed extension of High Ridge Drive that would then run into their property. Notably, several other access points, which terminate at other boundaries of the Greens' property, are available. Extension of any of these other streets would provide the necessary public road access for the Greens' proposed development. The Greens' desire for access by way of High Ridge Drive is seen as having been motivated by financial considerations; the alternative access routes would have been "more expensive and not as economically practical for ... development of [their] property."

The initiation of condemnation proceedings occurred after, and as a result of, the Greens, through counsel, contacting the County Commissioners by letter on January 25, 1991, suggesting that an "apparent error on the record plat [of High Ridge Estates] ... complicat[ed] the plan to extend High Ridge Drive into the Green property," and that the County might consider exercising its power of eminent domain to resolve the "problem."

The Greens submitted a Concept Plan for development of their property on September 30, 1991, which included the lots proposed to be created on the extension into their property of High Ridge Drive over the parcel suggested to be condemned. A Special Report to the Carroll County Planning and Zoning Commission, prepared by Bruce Waldron, recommended acceptance of the concept Plan, conditioned upon the Greens' ability to "gain in-fee access to High Ridge Drive or demonstrate the ability to build a County road across the fifteen-feet-wide Homeowners Association strip to High Ridge Drive." The Report also stated the following with respect to High Ridge Estates:

The approved Preliminary Plan of High Ridge Estates shows, by the absence of a permanent cul-de-sac, that the roads were intended to provide access for future development into adjacent properties. These temporary cul-de-sacs were meant to be removed as the roads were extended. The approved Preliminary Plan of High Ridge *shows a separate parcel over the old road and right-of-way that ran*

*parallel to the common property line between Aaron Green and the subdivision.*

In accordance with the practice at that time, the existing old right-of-way was placed on a separate parcel to keep it off the proposed lots. During the Final Plans Review of the subdivision, the right-of-way parcel was included with the open space parcel for use as a pedestrian pathway. The open space areas, as well as the fifteen-feet-wide parcel, are now owned by the High Ridge Homeowners Association.

There was other evidence also presented relating to preexisting rights of ways from which inferences could be made that, in fact, no error (as suggested by the Greens) had occurred. There was apparently a law in effect at the time that the High Ridge plat was recorded that prohibited the platting of a subdivision street over a pre-existing recorded right of way. Because a pre-existing right of way was believed to exist, High Ridge was not permitted to extend High Ridge Drive to the property line. That law apparently was later changed. Thus, appellant contends the termination short of the property line could not have been a mistake because, in the first instance, it was required by statute. At the Planning and Zoning Commission's November 19, 1991 meeting, the Commission made the following decision after considering Waldron's Report and arguments made by the Greens' representative:

**Decision:**

The Commission . . . approves the concept plan as presented and as conditionally recommended. . . . In taking this action, the Commission on review finds, that the road in question as detailed and approved, on the approved preliminary subdivision plan was clearly laid out to extend to and intersect with the adjoining property line of the Aaron Green property; and further that the final plat prepared for record, deviated from the approved plan and was therefore in error in that it did not reflect what had been intended and approved (the eventual extension of the street into adjoining property).

The County Commissioners met on February, 27, 1992, and voted "to condemn such property as necessary to implement the Planning and Zoning Commission recommendation with respect to the construction of a street *to serve the Aaron Green Subdivision* which will intersect with an existing culde-sac in High Ridge Subdivision." (Emphasis added.) The Commissioners then quoted the Planning and Zoning Commission's recommendation and decision in its entirety. Appellant notes that the County Commissioners addressed only the alleged error to which the Planning and Zoning Commission referred: "It is completely silent as to any statement of public purpose served by condemning [appellant]'s property."

On July 27, 1992, the County Commissioners filed a Complaint for condemnation in respect to appellant's land. On November 17, 1992, the trial court granted appellant's Motion for Separate Trial of Issues of Law. This allowed for the bifurcation of the Commissioners' authority to condemn from the remaining issues. Trial was held on December 2, 1992. On December 16, 1993, the trial court found in favor of the County on its right to exercise eminent domain against the subject property. A hearing regarding appellant's damages was then scheduled. On June 28, 1994, a stipulation of fair market value by the parties was presented to the trial court and judgment in accord therewith was entered.[2] Appellant filed this timely appeal therefrom. Ultimately, the County Commissioners chose not to participate in the appeal. The Greens were permitted to intervene.

## I.

### The Constitutionality of the Condemnation

We answer appellant's first question in the affirmative and shall reverse the judgment of the Circuit Court for Carroll County. In light of this decision, we do not address the

---

2. Said judgment was paid to the court on June 30, 1994, resulting in the County's acquisition of title to the property in question. The taking was, thus, technically complete.

remaining issues or propriety *vel non* of the County Commissioners' Election to Abandon and the Greens' Motion to Intervene.

Maryland Rule U6 states that

A proceeding for condemnation shall be commenced by filing a petition complying with Rules 2–303 through 2–305 as to form and contents and containing:

. . . .

(4) A statement of the purposes for which the property is sought to be condemned.

"The reason for this is plain. Without such a statement courts and litigants would not be able to determine whether a condemnation was proposed for a public purpose." *Prince George's County v. Beard,* 266 Md. 83, 96, 291 A.2d 636 (1972). In the case *sub judice,* the County provided the following averment in its Complaint:

4. That the property ... is needed for the proposed future public road....

While this bald assertion may appear to satisfy technically the requirements of Rule U6, it does not provide a basis upon which meaningful judicial review of the constitutionality of the condemnation proceeding may be conducted. *See Beard,* 266 Md. at 95–96, 291 A.2d 636 ("A legislative body can not make a particular use either public or private merely by so declaring it, for if it could do so the constitutional restraint [imposed by Maryland Constitution, Art. III § 40] would be utterly nugatory." (citation omitted)). A mere recital that a proposed property is needed for a particular public use is insufficient when dealing with the deprivation of private property rights. Indeed, the County provides no explanation other than the aforementioned allegation to substantiate its conclusory and self-serving declaration of the need for a "proposed future public road." One is left to wonder whether the use is buttressed by increased traffic flow, changing traffic patterns, and the like. "For us to hold on such a record that a public use has been established would be to hold, in essence, that a public body may condemn private property for any purpose

which suits its convenience...." *Id.* at 96, 291 A.2d 636. Despite having a "full opportunity to spell out the use it propose[d] making of the property *and all the details surrounding that use,*" *id.* (emphasis added), the County Commissioners failed to do so. "In order for a court to perform its judicial function," the *Beard* Court stated, "*the [proposed] plan should ... be comprehensive.*" *Id.* (emphasis added). Based on our review of the record, we find no such plan of public use, much less a detailed one. Moreover, we find no evidence to support a finding that *any* public use could be gleaned from a condemnation of the property at issue. We explain, but first we address the legal standards that apply in respect to condemnation in Maryland.

■ The power to exercise eminent domain is indeed an awesome one that must be adequately bridled lest "the rights of property [be] ... solely dependant upon the will of a legislative body, without restraint." *New Central Coal Co. v. George's Creek Coal & Iron Co.,* 37 Md. 537, 559 (1873), *appeal dismissed,* 40 Md. 425 (1874). The exercise of eminent domain is predicated upon due process of law. A taking for a use that is not imbued with a public interest "is such a violation of the basic and essential features of constitutional government that it amounts to a taking without due process of law...." 2A Nichols, *The Law of Eminent Domain* § 7.01[3] (3d ed. rev. 1990) (footnote omitted).

In the nascent stages of our nation's development, uncompensated takings for any use to which the government saw fit to put the property *were* sanctioned. "[T]he constitutional framers of post-colonial days perceived uncompensated takings as feudal redistributions of private property back to the government, *i.e.,* the king." *Offen v. County Council,* 96 Md.App. 526, 548 n. 7, 625 A.2d 424 (1993), *aff'd in part, rev'd in part,* 334 Md. 499, 639 A.2d 1070 (1994). Indeed, "[i]t was not until the introduction of improved methods of transportation operated by private corporations and the general extension of the activities of municipal governments ... that the limits of the power of eminent domain with respect to the purposes for which it could lawfully be exercised" arose.

Nichols, *supra* § 7.01. Even then, takings for the benefit of private interests were not expressly prohibited; "it had apparently never occurred to anyone that it might be attempted." *Id.*

> After it became ... accepted ... that the courts could not set aside an act of the legislature unless it violated some specific provision of the constitution, ... [t]he theory ... put forward [to justify a refusal to permit a taking for private use] was that the ... "eminent domain" clause[ ], by [negative] implication prohibited the taking of property for uses not public with or without compensation.

*Id.* § 7.01[2].[3]

The "Takings" Clause first appeared in the Federal Constitution upon the ratification of the Fifth Amendment on December 15, 1791. That clause only permits, provided that due process is afforded, "private property [to] be taken *for public use . . . .*" (Emphasis added.) U.S. Const. amend V. It is thus a long standing constitutional principle that private property may not be taken for other than a public use, U.S. Const. amend. V and XIV; Md. Const., Art. III § 40; Md. Declaration of Rights Art. 23; *Mayor of Baltimore v. Chertkof,* 293 Md. 32, 42, 441 A.2d 1044 (1982); *Shreve v. Mayor of Baltimore,* 243 Md. 613, 618, 222 A.2d 59 (1966); *Webster v. Susquehanna Pole Line Co.,* 112 Md. 416, 426, 76 A. 254 (1910); *Van Witsen v. Gutman,* 79 Md. 405, 410, 29 A. 608 (1894); 26 Am.Jur.2d *Eminent Domain* § 25 (1966); 29A C.J.S. *Eminent Domain* § 29a (1965), and may not be done without providing compensation therefor. Authorities differ, however, as to the precise meaning of "public use." "However 'public use' may be defined, for a use to be public it is not necessary that the entire community or any considerable portion of it should enjoy it. . . . [I]t is enough if the people of a particular locality receive the benefit." Nichols, *supra*

---

**3.** "Maryland was one of only three states that had a Takings Clause in its first constitution." *Offen v. County Council,* 96 Md.App. at 526, 548 n. 7, 625 A.2d 424 (1993), *aff'd in part, rev'd in part,* 334 Md. 499, 639 A.2d 1070 (1994).

§ 7.07 (citing *Prince George's County v. Collington Cross-roads, Inc.,* 275 Md. 171, 339 A.2d 278 (1975) and *Cox v. Revelle,* 125 Md. 579, 94 A. 203 (1915)) (footnotes omitted). Despite this uncertainty, however, it remains clear that a governmental entity's ability to condemn property is limited in scope to the nature of the public use supporting it.

The exercise of eminent domain must also be grounded upon public necessity. 26 Am.Jur.2d *Eminent Domain* § 2 (1966). It should only be exercised to the extent actually found necessary, *Webster,* 112 Md. at 431–32, 76 A. 254, although absolute necessity is not required; [4] *Washington Suburban Sanitary Comm'n v. Santorios,* 234 Md. 342, 346, 199 A.2d 206 (1964); *Johnson v. Consolidated Gas, Elec. Light & Power Co.,* 187 Md. 454, 462, 50 A.2d 918 (1947); *Levitsky v. Prince George's County,* 50 Md.App. 484, 488, 439 A.2d 600 (1982). "The necessity that the use shall be public excludes the idea that property may be taken under semblance of public use and ultimately conveyed and appropriated, or diverted, to a private use." [5] 29A C.J.S. *Eminent Domain* § 29a (1965) (footnote omitted).

The legislature, however, is not held to a strict public use, public necessity standard *so long as the public use and necessity is legitimate.* "[T]he words 'public use,' as written in our Constitution, mean use by the public." *Riden v. Philadelphia, Baltimore & Washington R.R. Co.,* 182 Md. 336, 342, 35 A.2d 99 (1943). " '[T]he test whether a use is public or not, is whether a public trust is imposed upon the property, whether the public has a legal right to the use, which cannot be gainsaid, or denied, or withdrawn at the

---

4. Indeed, "the decision . . . as to the public necessity for taking particular property is not subject to judicial review unless [the] decision is so oppressive, arbitrary or unreasonable as to suggest bad faith." *Murphy v. State Roads Comm'n,* 159 Md. 7, 15, 149 A. 566 (1930).

5. The necessity that serves as the basis for the taking must be judged as of the time the action to condemn was undertaken, not by a later result. *Rollins Outdoor Advertising, Inc. v. State Roads Comm'n,* 60 Md.App. 195, 201, 481 A.2d 1149 (1984).

pleasure of the owner.'" *Anne Arundel County v. Burnopp,* 300 Md. 343, 350, 478 A.2d 315 (1984) (quoting *Arnsperger v. Crawford,* 101 Md. 247, 253, 61 A. 413 (1905)). *See also Webster,* 112 Md. at 426, 76 A. 254. "[M]erely because private businesses or private persons will also receive benefit from the condemnation does not destroy the public character of the action." *Collington Crossroads,* 275 Md. at 187, 339 A.2d 278. *See also Chertkof,* 293 Md. at 43, 441 A.2d 1044; *Dobler v. Mayor of Baltimore,* 151 Md. 154, 165, 134 A. 201 (1926); Nichols, *supra* § 7.08; 29A C.J.S. *Eminent Domain* § 29a (1965) ("An ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use." (footnote omitted)). Moreover, the public character *vel non* of the use to which the condemned property will be put is not affected by the fact that, although the public may have a right to use it, it seldom does. *Burnopp,* 300 Md. at 350, 478 A.2d 315. *See also* 26 Am.Jur.2d *Eminent Domain* § 46 (1966) ("The public character of a road does not depend on the degree of public necessity or convenience that requires it, the extent to which the public uses it, or the number of persons that it accommodates." (footnote omitted)); Nichols, *supra* § 7.22[1] ("If a road is to be open for public travel the purpose for which the public may wish travel is not material, and land may be taken by eminent domain for a road which is intended solely for driving for pleasure ... or to furnish a view of beautiful natural scenery." (footnote omitted)). There must, however, be a *bona fide* public necessity for the public use and that use and necessity must be evidenced by more than *bald* assertions.

Moreover, whether the use contemplated by the condemnation is public or private is a matter for the courts to determine. *Chertkof,* 293 Md. at 43, 441 A.2d 1044; *Beard,* 266 Md. at 95, 291 A.2d 636; *Perellis v. Mayor of Baltimore,* 190 Md. 86, 93, 57 A.2d 341 (1948); *Riden,* 182 Md. at 340, 35 A.2d 99; *Pitznogle v. Western Maryland RR Co.,* 119 Md. 673, 678, 87 A. 917 (1913), *aff'd,* 123 Md. 667, 91 A. 831 (1914); *Van Witsen,* 79 Md. at 410, 29 A. 608; *New Central Coal,* 37 Md. at 560; 29A C.J.S. *Eminent Domain* § 30 (1965). A use cannot

be made public by mere declaration of the Legislature. *Chertkof,* 293 Md. at 43, 441 A.2d 1044; *Beard,* 266 Md. at 96, 291 A.2d 636 (citing *Arnsperger v. Crawford,* 101 Md. 247, 61 A. 413 (1905)); *Riden,* 182 Md. at 340, 35 A.2d 99; *Pitznogle,* 119 Md. at 678, 87 A. 917; *Van Witsen,* 79 Md. at 410, 29 A. 608. In reviewing a public body's decision to condemn private property, courts are limited in the scope of their scrutiny. Indeed, it lies in the discretion of the Legislature "to determine to what extent, on what occasions, and under what circumstances th[e] power shall be exercised. The Courts have no right to review or control its decisions on these points...." *Van Witsen,* 79 Md. at 411–12, 29 A. 608. "Although the legislature, *in the first instance,* has the power to determine the question of public use, it has no power to determine *finally* the extent of its own authority over private property. The question whether a use ... is really public is ultimately a judicial one." Nichols, *supra* § 7.16 and Maryland cases cited therein (footnotes omitted). The public use *vel non* for which the private property is sought is a question for the determination of the court, *Beard,* 266 Md. at 95, 291 A.2d 636,[6] " '... to be controlled by the facts, circumstances and necessities of th[e] case.' " *Collington Crossroads,* 275 Md. at 184, 339 A.2d 278 (quoting *Pitznogle,* 119 Md. at 678, 87 A. 917). *See also* Nichols, *supra* § 7.16[1].

█ When the condemnation centers around the use of a street or road, the extension of which is sought by a private individual or entity, the inquiry remains the same—public interest must permeate the taking or it will fail for want of validity. While "[t]he act of opening, widening and closing streets, is an exercise of the right of *eminent domain,*" *State ex rel. McClellan v. Graves,* 19 Md. 351, 369 (1863), it *must* be done in conjunction with public purpose and necessity. With these considerations in mind, we turn to the case *sub judice.*

---

**6.** *See also Mayor of Baltimore v. Chertkof,* 293 Md. 32, 43, 441 A.2d 1044 (1982); *Perellis v. Mayor of Baltimore,* 190 Md. 86, 93, 57 A.2d 341 (1948); *New Central Coal Co. v. George's Creek Coal & Iron Co.,* 37 Md. 537, 560 (1873).

■ Appellant challenges the validity of the condemnation, stating that its "truly private purpose is overwhelming." It is for this reason that appellant claims that the County Commissioners' action is constitutionally improper. We agree. In neither the legislative proceedings authorizing the filing of the Complaint for Condemnation nor the Complaint itself does the County, other than by a bald claim of public purpose, proffer any public purpose objectives or necessity or proffer any *evidence* of any such purpose or necessity to justify condemnation of the private pedestrian path located in High Ridge Estates. There is nothing to indicate how the public will benefit from extension of High Ridge Drive *per se* or how the extension inures to the public benefit. Moreover, given the evidence that development along a route other than High Ridge Drive would prove very costly for the Greens, that the Greens precipitated the condemnation for their private purposes, and that there is a virtual absence of any reasons providing a foundation for the stated public purpose, or evidence of same, we perceive the condemnation to have been clearly intended to inure solely to the benefit of the Greens, in derogation of the very well settled principle that, absent a *bona fide* public purpose for which the condemned land is sought, property may not be subject to the exercise of eminent domain.

In so deciding, we are cognizant of several cases that, though they appear factually close, are inapposite. In *Prince George's County v. Beard, supra*, 266 Md. 83, 291 A.2d 636, the Court of Appeals was faced with a similar set of circumstances. At issue was a quantity of real property sought to be condemned for use as an airport facility. Following enactment by the Maryland General Assembly of enabling legislation properly condemning the land, a County ordinance declared the effort abandoned; later efforts to reacquire the land through eminent domain were found to be lacking in the requisite public nexus to support the taking. The appellee challenged the validity of the condemnation petition on constitutional grounds, alleging that its sole purpose was private in nature. Following its decision to remand for further proceed-

ings as to the inclusion *vel non* of the project within the capital budget adopted by the County Council, the Court addressed the eminent domain facet of the case. The Court remanded on this issue as well, as it was unable to discern from either the petition or the record the public use for which the land was sought; "even the County Executive is unable to say what use will be made of the property." *Id.* at 96, 291 A.2d 636. The Court went on to reject any invitation to speculate and hold that a public use had been established on such a deficient record; to do so "would make the rights of property solely dependent upon the will of a legislative body without restraint. Such is not the law." *Id.*

In the case *sub judice*, we perceive a conspicuous deficiency in the record. There is no evidence in the record supporting the County's declaration of public purpose. The evidence is not weak; it is simply not there. The record is replete with support for the fact that condemnation in the instant case inures solely to the benefit of the Greens and was so intended.

We find *Anne Arundel County v. Burnopp, supra,* 300 Md. 343, 478 A.2d 315, to be equally unavailing as well as factually distinguishable. There, the Court of Appeals stated that the fact that a piece of land sought to be condemned is a dead end or a cul de sac does not prevent it from being for a public use. Quoting Nichols, *supra* § 7.22[1], the Court said: " '[I]t is no legal objection that a proposed highway will be a *cul de sac,* or that it will lead to the residence or place of business of but one individual, for the public may desire to visit or do business with him. . . .' " 300 Md. at 352, 478 A.2d 315. Be that as it may, the public use in *Burnopp,* unlike the case *sub judice,* was clearly established by legislative enactment, was described in the petition, and a public purpose could, at least, be inferred from the evidence.

The Commissioners' decision to initiate condemnation in the case at bar was clearly and solely made to enhance the private interests of the Greens. In essence, the County was using its powers of eminent domain to give Green access to and through appellant's private property. That is an inappropri-

ate use of the condemnation power. The County's action was thus oppressive, arbitrary and unreasonable. The trial court erred in upholding the condemnation. On the basis of the record in the case *sub judice,* no rational inferences of a genuine public purpose are possible.

We conclude and acknowledge that the Commissioners' attempt to abandon the proceeding was a belated good faith attempt to rectify that which should not have been commenced in the first instance. Thus, no costs shall be assessed against the County Commissioners of Carroll County, Maryland. All costs shall be assessed against the Greens.

**JUDGMENT REVERSED; COSTS TO BE PAID BY THE INTERVENORS/APPELLEES (GREENS).**