## CHARLES J. DOBLER *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Change of Street Grade—Recovery of Damages—Public Use— Interest of Individuals.*

In reviewing the grant of a prayer by which a verdict was directed for defendant, the truth of the plaintiff's evidence is to be assumed.    p. 159

Unauthorized acts of the officials and agents of municipal corporations, which result in damage to individuals, are compensable.    p. 160

An abutting owner had no right of action because of a change of the grade of the street, affecting the accessibility of his property, although the change was made to allow an unauthorized extension of a municipal belt line railroad along the street, no damage having resulted from such extension.    p. 160

A city, exercising its authority to change the grade of a street, in a skilful manner, and without encroaching upon the property of abutting land owners, is not answerable in damages.    pp. 161-163

The action of a municipality in changing the grade of a street for the purpose of extending a belt line railroad thereon

was not for a private rather than a .public use, merely because
it was done as the result of an agreement with a sugar refinery
company, as an inducement to the latter to locate its refinery
in the city, it appearing that the street as regraded, and also
the extension of the belt line, were open to the use of the public.
pp. 163-166

The fact that one person or corporation derives a greater bene-
fit from an improvement than may be derived by the public gen-
erally, does not make the improvement any less for the public
use.                                      pp. 165, 166

Nor is an improvement for a private rather than a public
use because it is made at the request of one or more property
owners in the neighborhood.                            p. 166

*Decided June 11th, 1926.*

Appeal from the Court of Common Pleas of Baltimore
City (STUMP, J.).

Action by Charles J. Dobler against the Mayor and City
Council of Baltimore and the American Sugar Refining Com-
pany. From a judgment for defendants, plaintiff appeals.
Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS,
OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Richard S. Culbreth,* for the appellants.

*Allen A. Davis, Assistant City Solicitor,* with whom was
*Charles C. Wallace, City Solicitor,* on the brief, for the
Mayor and City Council of Baltimore, appellee.

*Joseph F. Abbott,* for the American Sugar Refining Com-
pany, appellee.

DIGGES, J., delivered the opinion of the Court.

The plaintiff in this case is the owner of an unimproved
lot of ground located in Baltimore City, lying between Fort

Avenue and Clement Street, running from one of these streets to the other, with a frontage on each of 315 feet 5 inches. The lot was acquired by the plaintiff in January, 1920, is rectangular in shape, the depth or distance between Fort Avenue and Clement Street being 466 feet and the frontage on each of these streets being, as stated, 315 feet 5 inches. Fort Avenue was at the time of the purchase of the lot, and still is, an improved, paved street, while Clement Street, in January, 1920, where the plaintiff's lot abuts thereon, was a dirt street, not graded or paved, although a paper grade of Clement Street had been fixed by the city in 1909. The record discloses that the plaintiff's ownership of the lot of ground in question is in conjunction with William Merriken, the latter having an undivided one half interest therein. Mr. Merriken's occupation is that of a real estate broker, and prior to the purchase of the lot he had been employed by the real estate department of the Baltimore & Ohio Railroad to purchase or secure options on land lying on Clement Street in the immediate vicinity of the plaintiff's lot. The Baltimore & Ohio Railroad, in the procurement of land in that vicinity, was acting for the American Sugar Refining Company, which corporation subsequently purchased land and established one of its branches on the opposite side of Clement Street from the plaintiff's property. About two or three blocks distant from the plaintiff's land, going west on Clement Street, the Key Highway intersects Clement Street, and at a distance of about 18 feet east of the plaintiff's lot the Baltimore & Ohio Railroad tracks cross Clement Street, forming what is known as Jones Yard. At the time he purchased it, the grades of the plaintiff's lot, Clement Street, and the land to the·north of Clement Street subsequently occupied by· the American Sugar Refining Company, were practically the same; this is to say, the land on both sides of Clement Street was about the same elevation as the bed of the street. The municipal authorities of Baltimore City were of the opinion that the establishment of a branch of the American Sugar Refining Company in the city would be of marked benefit (and their judgment in this respect has been fully vindi-

cated), and, in their negotiations with the officials of the
Sugar Refining Company, expressed themselves as being will-
ing to do whatever was legally within their power to make
the locality suitable for the business operations of the refining
company. The refining company's property extended from
the north side of Clement Street to the Patapsco River. While
its property, therefore, had water transportation accessible,
and was adjacent to the tracks of the Baltimore & Ohio Rail-
road, it was an additional argument in inducing them to
locate in Baltimore to show that their property could be
directly connected with the Pennsylvania Railroad and the
Western Maryland Railroad, the other two great railroad
systems entering Baltimore. This could be done by the use
of what is known as a belt line railroad, which consists of
municipally owned tracks laid along certain streets of the
city, so that cars to be loaded or unloaded could be carried
directly from any one of the three railroad systems to the
factory or place of business of the person or corporation de-
siring the use of the cars. In 1920 the tracks of the belt
line extended in Key Highway to the point of its intersection
with Clement Street. The grade of Jones Yard, where the
Baltimore & Ohio tracks cross Clement Street, was about 20
feet lower than the grade of Clement Street, and in order
to extend the belt line railroad from Key Highway east on
Clement Street, and also connect with the Baltimore & Ohio
Railroad, it was necessary to lower the grade of Clement
Street to the level of the Baltimore & Ohio tracks where they
crossed or went under the old bed of Clement Street. In
doing this it would result in the plaintiff's lot, as it bordered
on Clement Street, being from about 10 to 20 feet above the
level of Clement Street as regraded. The city determined to
lower the grade of Clement Street to conform with that of
the Baltimore & Ohio tracks, and to improve, pave and better
the street, and also to extend the belt line railroad along the
street as thus regraded. The highway engineer of the city,
in accordance with the law and ordinance governing the same,
notified the city surveyor to establish a new grade on Clement
Street from Key Highway to Jones Yard, in order to carry

out the contemplated improvement. The city engineer, in accordance with the provisions of the ordinance, gave notice of the time at which he would re-establish the grade of Clement Street, but before the work was actually done the plaintiff in this case secured a preliminary injunction in the Circuit Court of Baltimore City, from the granting of which an appeal to this Court was taken, where the order granting the injunction was reversed and the bill dismissed. *Baltimore v. Dobler,* 140 Md. 634. The work was then completed by the city about May, 1922.

On August 22nd, 1924, the present case was instituted in the Court of Common Pleas by the appellant, who was also the plaintiff in the case in 140 Md., to recover damages for injury occasioned his lot by the regrading of Clement Street. The declaration, after stating the plaintiff's ownership of the lot, a description of the same, and the method of his acquisition of title, further alleges:

> "That, at the date of said conveyance to the plaintiff, Clement Street where it bounds said parcel of land of the plaintiff, was, and for more than ten years had always been, a public street of the said city, and the grade of said street was, and for more than ten years had always been, the same as the grade which had been established by the said City on or about the fourteenth day of October, 1909; that to the grade so established the grade of said parcel of land of the plaintiff conformed; that on the northeast side of Clement Street, and directly opposite said parcel of land of the plaintiff, and at an elevation twenty feet lower than that of said parcel of land of the plaintiff is the land of said company, which is improved by a very valuable plant for the refining of sugar; that within three years before this suit the city wrongfully changed said grade of Clement Street where it bounds said parcel of land of the plaintiff by sinking the bed of said street twenty feet and thereby deprived the plaintiff of the use of his said parcel of land on said street; that this the city did, not for any public purpose, but for the sole and exclusive purpose of sinking the bed of said street from the

level of said parcel of land of the plaintiff to the level
of said land of the said company for the private inter-
est, benefit and advantage of said company, and in pur-
suance of an understanding or agreement between them
that said company would establish said plant if the
city would so change the grade of said street."

After demurrers to the declaration had been overruled and
issue joined on the general issue plea, the case proceeded to
trial and testimony was offered on behalf of the plaintiff in
substantiation of the allegations contained in his declaration.
At the conclusion of the testimony the defendants offered a
general "demurrer to the evidence" prayer, as follows: "The
court instructs the jury that there is no evidence in this case
legally sufficient to entitle the plaintiff to recover against the
defendants, and the verdict must, therefore, be for the de-
fendants." This prayer was granted by the lower court, to
which action exception was taken by the plaintiff, and this
constitutes the only bill of exception in the record. Under
the direction contained in this prayer a verdict was rendered
for the defendants, and judgment entered upon said verdict
for costs. From that judgment the appeal is taken.

The effect of the ruling of the court on the prayer was
to determine that the plaintiff had offered no evidence legally
sufficient to entitle him to a verdict, and in determining the
correctness of this ruling we are bound to assume the truth
of the plaintiff's evidence. The declaration contains prac-
tically the same averments as contained in the bill for the
injunction passed upon by this Court in the case of *Balti-
more v. Dobler, supra.* A number of the allegations in that
bill were disposed of adversely to the plaintiff's contention,
because the averments merely stated a conclusion based on
information the source of which was not disclosed, and with-
out giving any facts or circumstances sufficient to enable
the court to reach its own conclusion. However, it was
decided in that case that a change in the grade of a street
made by a municipal corporation under statutory authority,
where abutting property is rendered more difficult of access,

without, however, destruction of all means of ingress and egress, does not involve a taking of property within the meaning of the constitutional prohibition of the taking of private property for public use without compensation. In that case Judge Adkins, speaking for the Court, said: "The controlling facts in the case are as follows: 1. There is no physical taking of any part of the lot. 2. There is no destruction of plaintiff's easement in the use of the street. 3. There are no improvements erected on the lot on Clement Street, the reasonable use and enjoyment of which would be destroyed by the proposed regrading. 4. There is a wide front of the lot on another street, so that ingress to and egress from the lot does not depend upon convenient access to Clement Street."

There can be no doubt that the decision in that case is conclusive and binding on the point that there has been no taking of the plaintiff's property in the constitutional sense. It is also conclusive that the plaintiff's easement in the use of the street was not destroyed; and further, that there were no improvements on the lot of the plaintiff abutting on Clement Street the reasonable use and enjoyment of which were destroyed; nor was ingress to and egress from the lot so prevented as to amount to a taking. We must consider these matters as *res adjudicata*.

But the plaintiff in this case contends that if the municipality had no authority to do the thing it did, the doing of which resulted in injury to the plaintiff, he is entitled to consequential damages therefor; that the unlawful thing, or the thing done without authority, was the extension of the belt line railroad east on Clement Street from Key Highway to the yards of the Baltimore & Ohio Railroad, and that the regrading of Clement Street was incidental to that main and unlawful purpose. There is no need of citation of authority for the proposition that unauthorized acts of the officials and agents of municipal corporations which result in damage to individuals, are compensable; but we do not think that that principle can be applied to the facts

in this case, for the reason that we do not have to inquire or determine whether the extension of the belt line railroad along Clement Street was done under valid authority, it being wholly unnecessary for a determination of this case.

The injury complained of, for which damages are asked by the plaintiff, grows out of and is alleged to be caused by the lowering of the grade of Clement Street along the line of the plaintiff's property, and leaving that property, after such lowering, at an elevation of from 10 to 20 feet above the surface of the street. All of the testimony is to that effect. There is no testimony that the extension of the belt line railroad injured the plaintiff, and no evidence of one cent of damage resulting therefrom. Assuming, then, (without so deciding) that this extension by the city was without legal authority, there could be no recovery in this case, because no damage is shown to have occurred by reason of the doing of the unauthorized act. The whole injury alleged and shown to the plaintiff's property was occasioned by the lowering of the grade, or the regrading, of Clement Street. The evidence is that the city had fee simple title to the bed of this street, and it is conceded that the Mayor and City Council have ample authority to establish and re-establish the grades of the streets and alleys of the city whenever in their judgment the public necessity or public convenience requires. Having this authority, if it be exercised in accordance with the provisions of the law governing the same, in a skillful manner and without encroaching upon the property of the abutting land owners, the city is not answerable in damages.

In *Balto. & O. R. R. v. Kane,* 124 Md. 231, this Court, speaking through Judge Burke, said: "There can, therefore, be no question as to the power of the city to do the things it did do, and having lowered the grade of Eutaw Street in the interest of the public, and having done the work in a lawful and skillful manner, it cannot be held liable for the damages suffered by the plaintiffs, although

the improvements did inure to the great benefit and advantage of the Baltimore and Ohio Railroad Company. This principle has been settled by a long line of decisions by this Court, and practically by the unanimous decisions of the courts elsewhere."

In *Baltimore City v. Cowen,* 88 Md. 447, at page 456, Judge McSherry said: "There is just, then, the distinction that exists between the occupancy and the non-occupancy of another's property. If the municipality occupies in opening and maintaining its street the private property—the right of way of an individual or a railroad, by crossing with its street that right of way without a condemnation of the prior easement, it must pay the damages it subjects the owner to by that occupancy. The occupancy—the right of the public to use the private easement—is continuous. If the municipality simply grades or regrades its streets and does this skillfully without trenching on the property of the adjoining owner, it is under no obligation to pay consequential damages, because the individual holds his abutting and untaken property subject to the superior right of the governmental agencies to make such changes in the grade of the highways as the public convenience may require. It is obvious, therefore, that totally different legal principles are applicable to these dissimilar classes of cases."

In *Cumberland v. Willison,* 50 Md. 138, our predecessors, speaking through Judge Miller, said: "How far municipal corporations are liable for consequential damages to private property resulting from the exercise of their corporate powers, or what will amount to the 'taking of private property for public use' in the constitutional sense of these terms, has been the subject of much discussion and controversy. Certain general principles seem, however, to have been clearly settled by the current and weight of judicial authority. Thus it is well settled that such a corporation is not liable to an action for consequential damages to private property or persons (unless it be given by statute) where the act complained of was done by it or its officers under and

pursuant to authority conferred by a valid act of the Legislature, and there has been no want of reasonable care or skill in the execution of power, although the same act, if done without legislative sanction, would be actionable. 2 *Dillon on Mun. Corp.*, sec. 781. Upon this principle it has been decided by a great preponderance of authority that municipal corporations acting under authority conferred by the Legislature to make and repair, or to grade, level, and improve streets, if they exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoining owner whose lands are not actually taken, for consequential damages to his premises, even though in grading and leveling the street a portion of the adjoining lot in consequence of removal of its natural support falls into the highway, and the same immunity exists if the street be embanked or raised so as to cut off, or render difficult the access to the adjacent property, and this, too, although the grade of the street had been before established and the adjoining property owner had erected buildings or made improvements with reference to such grade. Property thus injured is not in the constitutional sense taken for public use. This doctrine was long since announced after the most careful consideration by courts of the highest authority and by judges of great eminence and learning." Citing *Collender v. Marsh,* 1 Pick. 418; *Radcliff v. Brooklyn,* 4 Comst. 195; *O'Connor v. Pittsburgh,* 18 Pa. St. 187; *Goszler v. Georgetown,* 6 Wheat. 595; *Smith v. Washington,* 20 How. 135. The learned judge then went on to say that these authorities had been followed by decisions in almost every state of the Union where the question has arisen, "and in fact to such an extent that even the citation of the cases has become burdensome and superfluous."

The appellant further contends that this doctrine does not apply if the authority was not exercised by the city as a governmental agency in the performance of a public function, or where the authority is exercised to promote a mere private

purpose, or subserve mere private interest, or to subordinate the right of one citizen in the streets of the city to the private interests and convenience of another. We are of the opinion that this contention cannot be sustained when we apply the facts as disclosed by the record. The appellant erroneously assumes that the extension of the belt line railroad on Clement Street was the cause of the injury to his property, while all of the evidence shows to the contrary, and then argues that the exercise of the authority was not by the city as a governmental agency in the performance of a public function. From what has been said, it is clear that the governmental function being exercised by the city was that of regrading and paving Clement Street, and that this was clearly the performance of a public function. Neither do we think that this authority exercised by the city was to promote a private purpose, subserve a private interest, or subordinate the right of one citizen in the street to the private interest and convenience of another. In other words, we are clearly of the opinion that it was a public purpose that was being subserved, and the fact that in performing this public function one individual or a number of individuals would be benefited to a greater degree than the public at large, is no objection to the validity of that action.

The test of whether a case is public or not, as stated in the case of *Arnsperger v. Crawford,* 101 Md. 248, is: "whether a public trust is imposed upon the property, whether the public has a legal right to the use, which cannot be gainsaid, or denied, or withdrawn at the pleasure of the owner." This Court adopted that test, after first stating: "The Constitution does not define the term, 'public use,' but leaves us to resort to the natural meaning of the words, and we think this meaning is clearly and correctly expressed by Mr. Lewis in section 165, in which he says, 'public use means the same as use by public,' giving as his reasons for this conclusion the following: 'First, that it accords with the primary and more commonly understood meaning of the words; second, it accords with the general practice in regard to taking private property for public use, in vogue when the phrase was employed in

the earlier constitutions; and third, it is the only view which gives these words any force as a limitation, or renders them capable of any definite and practical application.' There will be found two different views of the meaning of these words which have been taken by the courts; one, there must be use, or right of use by the public, or some limited portion of the public; the other that they are equivalent to public utility or advantage. If the former is the correct view, the legislature and the courts have a definite, fixed guide for their action; if the latter is to prevail, the enactment of laws upon this subject will reflect the passing popular feeling, and their construction will reflect the various temperaments of the judges, who are thus left free to indulge their own views of public utility or advantage. We cannot hesitate to range this Court with those which hold the former to be the true view."

Applying this test to the facts of this case, it is clear that the regrading and paving of Clement Street, as well as the extension of the belt line, constituted a public use; that is to say, it was done for the purpose of the public's using it. All of the public have a perfect and undeniable right to resort to the use of this street whenever their business, convenience, or pleasure may require; the evidence showing that there are two improved paved streets between Key Highway and Jones Yard of the Baltimore & Ohio Railroad, which connect that part of Clement Street which was regraded with Fort Avenue, and that the belt line railroad, as extended, is available to the public generally for the purpose of having placed there cars for loading or unloading. The fact that the defendant American Sugar Refining Company, or any other person or corporation in that immediate vicinity, derives a greater benefit from the improvement than may be derived by the public in general, in no way changes the rule or makes it any the less a public use. In the case of *Baltimore v. Brengle,* 116 Md. at page 348, which case dealt with the closing of a street, this Court said: "It cannot be said that, because some parties may receive more direct benefits than the public at large by closing this avenue, it is therefore for a private and not a public use. A street opened, graded

and paved through a piece of land may enable the owner to sell lots for many times their former value, and it sometimes results in making a few persons wealthy; but it cannot be said that because the opening of the street may have such an effect it is for a private and not a public use. It is perhaps rare for an application to be made to the county commissioners of a county to open, alter or close a road, excepting when one or more persons are specially interested in having it done. The cases of *Jenkins v. Riggs*, 100 Md. 427, and *Riggs v. Winterode*, 100 Md. 439, are striking instances of special benefits derived by an individual by the closing of an old road and the opening of new ones. The old road had not only reverted to Mr. Riggs, but was actually conveyed to him; but in the judgment of the county commissioners the public was benefited by the changes and Mr. Riggs was sustained by this Court in what was done."

In addition to what was said by this Court in *Baltimore v. Brengle, supra,* it might be observed that it is usual for the authorities, both in the city and counties, to open, close, grade and improve streets and highways as a result of the request, and in many instances the insistence, of parties either residing or owning property in the neighborhood in which the road may be opened or closed. If it were held under such circumstances that any action by the authorities in response to such request constituted the improvement a private rather than a public use, and was therefore illegal, betterments along this line would be very greatly minimized. It follows that if the American Sugar Refining Company, who owned or proposed to acquire property along Clement Street, requested the city authorities to take the action which is shown in this case, or even made such action a condition to its establishment of a branch factory in Baltimore City, it does not render such action a private, as contradistinguished from a public, use. Clement Street, as regraded and improved, is accessible to and can be used by the public generally, and all of the property owners adjoining thereon, including the plaintiff, have the same right to the use of the street, as improved, as has the Sugar Refining Company, although they

may not make use of the right to the same extent as that company. It may be also noted that, although the declaration alleges that the action of the city was not for any public purpose but for the sole and exclusive purpose of sinking the bed of the street from the level of the plaintiff's land to the level of the land of the Sugar Refining Company, for the private interest of that company, the evidence nowhere substantiates this allegation, but on the contrary conclusively shows that at the time the change of grade was made in Clement Street, the level of the Sugar Refining Company's property on the north side of the street was practically the same as the plaintiff's on the south side of the street.

From the views herein expressed, it follows that we are of the opinion that there is no evidence contained in the record legally sufficient to entitle the plaintiff to recover, and therefore there was no error in the lower court's granting the prayer instructing a verdict for the defendant.

*Judgment affirmed, with costs to the appellee.*