## BOSWELL *v.* PRINCE GEORGE'S COUNTY, MARYLAND

[No. 78, September Term, 1974.]

*Decided January 16, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Morris Topf,* with whom were *Stanbury & Topf* on the brief, for appellant.

*Michael O. Connaughton, Associate County Attorney,* with whom was *Joseph S. Casula, County Attorney,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Landowners when faced with a proposed acquisition of their land for public improvements, whether by way of easement or in fee simple, have often suggested to the courts that they saw a better way to do the improvement than that

proposed by the condemning authority. *See, e.g., Director v. Oliver Beach Imp. Ass'n,* 259 Md. 183, 269 A. 2d 615 (1970); *State Roads Comm. v. Franklin,* 201 Md. 549, 95 A. 2d 99 (1953); *Johnson v. Gas & Electric Co.,* 187 Md. 454, 50 A. 2d 918 (1947); and *Murphy v. State Roads Comm'n.,* 159 Md. 7, 149 A. 566 (1930). They have been uniformly unsuccessful in this Court. In this case the property owner, Harry A. Boswell, Jr. (Boswell), will be equally unsuccessful, but his contentions are of a somewhat different nature because his complaint in part is that Prince George's County (the County) took land for a two-lane highway rather than a four-lane highway.

A bifurcated trial was held, with the question of the County's right to take the land decided as a preliminary matter. As to this procedure, see Maryland Rule 502 a; *Director v. Oliver Beach Imp. Ass'n, supra* at 190; and *Lustine v. State Roads Comm.,* 217 Md. 274, 278, 142 A. 2d 566 (1958).

The appeal here relates only to the trial court's preliminary determination as a matter of law of the County's right to condemn. Whether the use for which private property is taken is public, within the meaning of Maryland Constitution Art. III, § 40, is a judicial question to be determined by the courts. *Prince George's Co. v. Beard,* 266 Md. 83, 95, 291 A. 2d 636 (1972), and cases there cited. Boswell does not challenge the trial on the issue of damages.

The highway in question is Oxon Hill Road. Prior to the effective date of the present Prince George's County Charter on February 8, 1971, the governing body of the County was its Board of County Commissioners. Evidence was presented that as originally designed under the aegis of that body and submitted to various agencies such as the Maryland National Capital Park and Planning Commission and the Washington Suburban Sanitary Commission in early 1969, the road was to be a four-lane highway. The County Executive testified that when he took office upon the effective date of the charter a portion of the improved road was planned as a two-lane highway and a portion as a

four-lane highway. He issued a directive that the County proceed no further with the acquisition of land until the project had been fully reviewed. The review included "an informational survey . . . made of residents in and around Oxon Hill Road to determine the type of road that was desired." The County Executive described that survey as "one of the factors in helping [him] make [his] decision" to change the proposed design to a two-lane highway.

On October 31, 1973, the County Executive directed the County Attorney to proceed to condemn subject property. The directive recited, among other things, that it had been "determined that the [therein] described property [was] necessary for the construction, reconstruction and/or maintenance of Oxon Hill Road"; that "after negotiation[s] Prince George's County ha[d] been unable to negotiate the purchase of said property"; that it was "determined to be necessary that said property be condemned for said public purpose and necessity in order that said public road be constructed, reconstructed or maintained"; that "the capital project [t]herein described ha[d] been authorized by the County Council on page 270 of the Capital Improvement Program approved for Fiscal Year 1972-73"; and that "funds to carry out the capital project [t]herein described [were] provided by State Highway Bonds." No evidence was offered at trial as to the actual inclusion of the project in the capital improvement program. The trial judge (Robert B. Mathias, J.) made a finding in favor of the County. Some additional facts will be developed in the process of the opinion.

Boswell raises five questions here, namely, (1) whether "there [was] an improper delegation of the condemnation function" which would require the granting of Boswell's motion to dismiss; (2) whether "the taking constitute[d] a taking for public purpose when the road project was changed to satisfy a local pressure group bent upon discouraging the ingress of minority groups from the District of Columbia"; (3) whether "the burden to prove public purpose shift[ed] back again to the county once a prima facie showing of discrimination had been made out"; (4) whether "the trial

court commit[ted] error in not permitting testimony as to patterns of discrimination in connection with the county executive's decision to downgrade the highway project" ; and (5) whether "the federal revenue sharing funds used in connection with the highway necessitate[d] a threshold analysis as to whether or not an environmental impact statement and/or its attendant public hearings were necessary." We shall consider the questions raised in inverse order.

The final question presented relative to "an environmental impact statement and . . . its attendant public hearings" is without merit. Boswell said that he had "held professorial appointments in the field of both planning and . . . law; in the field of planning dealing in particular with the multi-disciplinary approach to the planning processes, in the field of law dealing with planning law, condemnation law, environmental law and administrative law," teaching, among other places, at the University of Tennessee, Union College, American University, and the University of Maryland. He is a lawyer admitted to practice in the District of Columbia, but not in Maryland. He claimed a familiarity with state, county, and municipal budgets. After this recitation he was asked whether or not from his examination of the Prince George's County budget Federal revenue sharing funds would be used in this project. He replied:

> "To give a complete answer and a complete understanding it would be important to try to explain the whole nature of the state and local assistance fiscal act which is known as Federal Revenue Sharing, but I would point out one specific item that relates without any question in the budget of Prince George's County the funds going into the total road construction project that will be developed in this area. Prince George's County has a policy that street lighting will be provided as part of a total road construction in these areas where there are residential houses adjacent which is the situation right at this immediate vicinity, and very

clearly within that policy of Prince George's County Federal Revenue Sharing funds will go into those investments by the county."

The County Executive was called as a witness for Boswell. In response to a question as to whether Federal revenue sharing funds would be used on this project, he said:

"I don't recall specifically if we have any kind of supplemental appropriation in for extra funds for this year to be used in any of that or not. I would have to go back and check my records. Certainly the original money I assume that is enough money to do the part of the project we have now and to not require any Federal Revenue Sharing funds."

This statement came after he had first testified that he did not believe there was a requirement for an environmental impact statement where revenue sharing funds were used for "a small road project."

This was all of the evidence presented on the use of Federal funds. The trial judge said upon this matter:

"Now, as to the contention of federal funds, I understand Mr. Boswell's testimony and have a great deal of respect for him, but he says in his opinion some of the lights that will ultimately go along this road will be bought with federal funds, but there is absolutely no basis for it whatsoever, just a generalization that he reviewed the budget. It is not a sufficient basis for the Court to be impressed with the fact that the county executive indicated no, and there is nothing for them to support the contention that the federal funds will be used. The proof is very inadequate to sustain that contention . . . ."

This determination was not clearly erroneous. Rule 886 is applicable.

The fourth point is likewise without merit. Boswell attempted to establish what he called "testimony as to

patterns of discrimination in connection with the county executive's decision to downgrade the highway project" by putting into evidence portions of the transcript of a hearing held relative to a proposed fair housing ordinance by the former Board of County Commissioners for Prince George's County on October 3, 1967. The hearing in this case on the legal propriety of the taking was held on March 14, 1974, almost six and a half years later. The significance of the proffered evidence was that two individuals, one of whom said he was "authorized by the Board of Directors to speak on behalf of the Oxon Hill Vista Association" and the other of whom was said by Boswell to be connected with that association, testified in opposition to the proposed ordinance. Boswell claimed that these two individuals had expressed to the County Executive their opposition to a four-lane highway in this location. The trial judge found the evidence not relevant and denied its admission. He did not err.

No "prima facie showing of discrimination" was made. It thus is unnecessary to consider the third contention of Boswell.

Boswell apparently sees evil in the fact that the County Executive had a survey made of public opinion in the area and took the results of that survey into consideration in reaching a decision as to the type of highway to be constructed. The more common charges by disgruntled citizens against public officials concern their alleged refusal to consider the wishes of the citizenry in a given matter or that the police power is being so exercised as to "deprive an individual of property rights by a plebiscite of neighbors or for their benefit." Cf. Benner v. Tribbitt, 190 Md. 6, 57 A. 2d 346 (1948). This case has not the slightest resemblance to Bradshaw v. Lankford, 73 Md. 428, 21 A. 66 (1891), relied upon by Boswell. In that case "the question whether or not the taking of oysters by scoop or dredge, within the waters of Somerset County, sh[ould] be prohibited, was submitted to the voters of certain election districts of said county," with the proviso that "should a majority of the votes cast be in favor of the prohibition, . . . it should be unlawful for any

person to take oysters by scoop or dredge within the waters of said county." This was held to be an unlawful delegation of legislative power. It was pointed out that the oyster beds did not belong to the people of Somerset County, "much less to the voters of certain election districts of the county," to whom the operation of the act was submitted, and that it "deprive[d] the people of the entire State of the common right which they enjoyed to take oysters by scoop or dredge within the waters of said county."

People in government entrusted with the responsibility of making decisions, be they executive, legislative, or judicial, should and do listen to and weigh arguments advanced on all sides of a given proposition. Listening to views of property owners prior to making a decision does not constitute action so oppressive, arbitrary, or unreasonable as to suggest bad faith, which we have said is necessary in order to set aside a condemnation of private property for public improvement. What Judge Delaplaine said for this Court in *Masson v. Reindollar*, 193 Md. 683, 69 A. 2d 482 (1949), repeated verbatim for the Court by Judge Collins in *State Roads Comm. v. Franklin*, 201 Md. 549, 561, 95 A. 2d 99 (1953), and echoed in *Director v. Oliver Beach Imp. Ass'n*, 259 Md. 183, 191-92, 269 A. 2d 615 (1970), is equally applicable here:

> "But we specifically hold that the Court will not control or review the exercise of the discretionary power of the State Roads Commission, unless such exercise is fraudulent or such abuse of discretion as to amount to a breach of trust. Any other rule would have the effect of substituting the decisions of the courts for the discretion reposed in the Commission, and would disrupt the policies of the Commission, taking out of the hands of a single State agency the administration of their important functions and placing them in the hands of the courts." *Id.* at 689.

In this case there is no contention of fraud. The action of the County does not constitute "such abuse of discretion as to amount to a breach of trust."

The argument of Boswell relative to delegation of the condemnation function may be summarized as being that the County Executive was without the power to direct acquisition of subject property.

The right of eminent domain is a part of the sovereign power of the State. Under ordinary conditions the exercise of this power resides exclusively in the Legislature, the elected representatives of the people. 1 Nichols, *Eminent Domain* § 3.21 (rev. 3d ed. J. Sackman 1973). However, "[w]hen property is to be taken for local public purpose the power is usually delegated to the municipal corporation or other governmental subdivision of the state in which the land lies, and such delegation is unquestionably within the power of the legislature." 1 Nichols, *op. cit.* § 3.21 [1], citing *Alexander v. M. & C.C. of Baltimore*, 5 Gill 383, 46 Am. Dec. 630 (1847). In that case our predecessors said:

"That the General Assembly possesses the power to delegate to the Mayor and City Council of Baltimore, and to the commissioners or Levy Courts of the counties, authority to alter or open streets and roads, when in their opinion, such an improvement is required by the public convenience, is a proposition that has been, repeatedly, and in various forms, acknowledged by both the legislative and judicial departments of the government; and is sanctioned by a practical exposition of the Constitution, as exhibited in the usage and practice of the State, for a long series of years." *Id.* at 395.

Prior to the adoption of the Charter of Prince George's County, its county commissioners had the authority to acquire land by condemnation under two acts, Maryland Code (1957, 1966 Repl. Vol.) Art. 25, § 11A, granting authority to the county commissioners of all counties, "to acquire by . . . condemnation . . . any property, or any interest therein, of any kind needed for any public purpose . . . ," and Code of Public Local Laws of Prince George's County (1963) § 18-1 (d) providing that the county commissioners were "empowered to acquire by . . .

condemnation real or leasehold property needed for any public purpose . . . ." By Code (1957) Art. 25A, § 4 the grant of powers under Art. 25 terminated with the adoption of the charter. By § 101 of that document, Prince George's County is vested with "all rights and powers of local self-government and home rule as [were then] or [t]hereafter . . . provided or implied by [that] Charter and by the Constitution and laws of the State of Maryland." The grant of power under the Prince George's County Code would have been one of the public local laws continued in force under § 1102 of the charter since it was not inconsistent with the charter and was not expressly repealed. The provision is consistent with Constitution Art. XI-A, § 1. Thus we can say that the power of eminent domain lived on after the adoption of the charter notwithstanding the apparent failure of the County to avail itself of the power granted charter counties by Code (1957) Art. 25A, § 5 (B) "to provide for the . . . condemnation of property required for public purposes in the county." Accordingly, the only question with which we are now faced is whether there has been proper use of the power heretofore granted by the General Assembly.

In *Anne Arundel County v. Bowen,* 258 Md. 713, 720, 267 A. 2d 168 (1970), Judge McWilliams observed for this Court that a charter "County [could] exercise the power [of eminent domain granted to it] only through the duly authorized personnel of its executive branch." In that case the challenge before the Court was as to the sufficiency of a petition for condemnation arising under the Anne Arundel County Charter. That county had availed itself of the invitation in Art. 25A to enact legislation relative to eminent domain. Anne Arundel County Code § 1-317 provided for condemnation "as the county executive [might] deem to be necessary or desirable." Judge McWilliams there said for the Court:

"Having held, in *Hormes* [*v. Baltimore County,* 225 Md. 371, 170 A. 2d 772 (1961)], that the County Executive was simply 'executing authority granted

by laws already in existence' when he negotiated and executed a ten-year lease of a floor of an office building, we have no difficulty extending that holding to include, in the circumstances here present, the condemnation of the Bowens' property. *City of Bowie v. County Comm'rs of Prince George's County,* 258 Md. 454 (1970)." *Id.* at 720.

In *Eggert v. Montgomery Co. Council,* 263 Md. 243, 259, 282 A. 2d 474 (1971), we held "that the authorization of the [construction of the road] project [there under consideration] was an executive and not a legislative function."

In *City of Bowie v. County Comm'rs,* 258 Md. 454, 461, 267 A. 2d 172 (1970), the County Commissioners of Prince George's County, without prior notice or hearing, passed a resolution relative to borrowing money for construction of an airport. It was claimed that this was in violation of a local law requiring notice and hearing as to "[a]ll acts, ordinances, resolutions, or amendments thereto adopted by the Board in its legislative capacity." (Code of Public Local Laws of Prince George's County (1963) § 18-1 (h)). Chief Judge Hammond said for this Court that "[w]e agree[d] with Judge Digges that the Commissioners did not act legislatively but, rather, executively or administratively in adopting the resolution."

We had occasion in *Prince George's County v. Beard,* 266 Md. 83, 291 A. 2d 636 (1972), to consider the Prince George's County Charter and its provisions relative to capital improvements, which this highway project obviously is. In fact, § 804 (c) defines the term "capital project" as meaning:

"(1) any physical public betterment or improvement and any preliminary studies and surveys relative thereto; (2) the acquisition of property of a permanent nature for public use . . . ."

By § 804 (d) "capital budget" means "the plan of the county to receive and expend funds for capital projects during the first fiscal year included in the capital program." "Capital

program" as defined in § 804 (e) means "the plan of the county to receive and expend funds for capital projects during the fiscal year covered by the capital budget and the next succeeding five fiscal years thereafter." Under § 808 "[t]he proposed capital budget and capital program shall be so arranged as to set forth clearly the plan of proposed capital projects to be undertaken in the ensuing fiscal year and in each of the next five fiscal years, and also the proposed means of financing the same."

The statement is made in the executive order directing the County Attorney to proceed with condemnation that the project had been authorized by the County Council with reference given to the page of the "Capital Improvement Program approved for Fiscal Year 1972-73." Unfortunately, no proof of such authorization was presented nor was the trial judge requested to take judicial notice of the authorization. The Prince George's County Charter provides in § 815 that "[t]he budget as adopted shall be reproduced and made available to the public upon request." Accordingly, pursuant to the authorization of Code (1974) § 10-203(a), Courts and Judicial Proceedings Article permitting "public laws, ordinances, regulations, and resolutions approved and enacted by a county . . . [to] be judicially noticed or read in evidence from the printed volumes or from a true copy of an amendment published by the authority of the county . . . ," we have taken judicial notice of the budget. We find that the project was indeed included in the budget. Thus, proper legislative authorization for this project existed. It was an executive function, not a legislative function, to proceed with the actual acquisition.

*Judgment affirmed; costs to be paid by appellant.*