695 A.2d 125

Aaron E. GREEN and Ruth E. Green

v.

HIGH RIDGE ASSOCIATION, INC.

BALTIMORE COUNTY, MARYLAND

v.

Allan J. GODLEWSKI et al.

Nos. 125, 126, Sept. Term, 1995.

Court of Appeals of Maryland.

June 6, 1997.

Reconsideration Denied July 23, 1997.

John T. Maguire, II (Hollman, Hughes, Finch and Maguire, Chartered, on brief), Westminster and Michael G. Comeau, Assistant County Attorney (Virginia W. Barnhart, County Attorney; William O. Jensen, Jr., Assistant County Attorney, on brief), Towson, for Petitioners.

David K. Bowersox (Hoffman, Comfort, Galloway & Offutt, on brief), Westminster and Kathleen Gallogly Cox (Venable, Baetjer and Howard, L.L.P., on brief), Towson, for Respondents.

Argued before MURPHY*, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

These two cases concern the propriety of Carroll County's and Baltimore County's exercise of eminent domain over two parcels of private property. The specific questions presented to this Court in both cases are whether each condemnation serves a "public use" in accordance with Article III, § 40, of the Maryland Constitution,[1] and whether each condemnation is "needed" or "required" for such public use in accordance with Maryland Code (1957, 1996 Repl.Vol.), Art. 25, § 11A(a)(1)(i), and Art. 25A, § 5(B).[2]

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

1. Article III, § 40, of the Maryland Constitution provides as follows:
 **"Section 40. Eminent domain.**
 The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

2. Art. 25, § 11A(a)(1)(i), applicable in county commissioner counties such as Carroll County, states (emphasis added):
 "(1) Except as provided in subsection (b) of this section, the county commissioners of every county may:
 (i) Acquire by purchase, gift, devise, bequest, condemnation, or otherwise, any property, or any interest therein, of any kind *needed* for any public purpose;...."
 Art. 25A, § 5(B), applicable to charter counties such as Baltimore County, authorizes the counties, *inter alia*, "to provide for the ... condemnation of property *required* for public purposes in the county...." (Emphasis added).

I.

As this opinion encompasses two separate cases, we shall discuss the facts of each case in turn.

### A. No. 125, Green v. High Ridge Association, Inc.

The petitioners Aaron and Ruth Green own a 135 acre farm in Carroll County, a portion of which they plan to develop into thirteen residential lots. This portion of the Greens' property is adjacent to the High Ridge subdivision and is separated from the end of High Ridge Drive by an unimproved 750 square foot strip of land owned by the respondent High Ridge Association, Inc. Presently, this strip of land is used as a pedestrian pathway by homeowners, including the Greens, residing near and within the High Ridge subdivision. High Ridge Drive, which ends at this pedestrian pathway, is a public road owned and maintained by Carroll County.

The Greens sought to extend the end of High Ridge Drive to their property line for ingress to, and egress from, their proposed residential development. The Greens contacted the County Commissioners of Carroll County, who directed the Carroll County Planning and Zoning Commission to study the possibility of condemning the 750 square foot strip of land.

In a report to the Planning and Zoning Commission, Commission staff members recommended acceptance of the Greens' plan to develop their property and to extend High Ridge Drive to their property line. The recommendation was conditioned, however, upon the Greens "gain[ing] in-fee access to High Ridge Drive or demonstrat[ing] the ability to build a County road across the fifteen-foot-wide Homeowners Association strip to High Ridge Drive." The Planning and Zoning Commission adopted its staff's conditional recommendation, determining that the "road in question was clearly laid out to extend to and intersect with the adjoining property line of the Aaron Green property." The Commission further determined that any deviation from this original plan resulted from an "error" on the final recorded plat which "did not reflect what had been intended and approved." After reviewing the findings of the Planning and Zoning Commission, the Carroll

County Commissioners voted to condemn the 750 square foot strip of land in order to extend the public road.[3]

The County Commissioners filed a complaint in the Circuit Court for Carroll County to condemn the 750 square foot strip of land. After a trial on the issue of the County's right to condemn, the circuit court filed a memorandum and order concluding that the condemnation was authorized. Relying upon *Anne Arundel County v. Burnopp*, 300 Md. 343, 478 A.2d 315 (1984), the circuit court held that because "the newly extended High Ridge Drive will be open to the public for use," the condemnation of the strip was for a "public use." Moreover, the court found "nothing in the decision [to condemn the property] itself or in the decision-making process which is so oppressive, arbitrary or unreasonable as to suggest bad faith." Thereafter, the parties stipulated in the circuit court to the fair market value of the condemned property, and a judgment of condemnation was entered in favor of the County. Two days later, the County paid the amount of the judgment into court.

The Association filed a timely notice of appeal to the Court of Special Appeals. After the record and a joint record extract were filed with the intermediate appellate court, but before the submission of the County's brief, the County filed in the Court of Special Appeals an "Election to Abandon" the condemnation.[4] The Court of Special Appeals rejected the

---

3. According to testimony at trial, the Commissioners sought to condemn the Association's strip of land: (1) to carry out the intent of the master plan by extending a planned public road; (2) to correct an "error" in the master plan which improperly labeled the subject parcel as part of the Association's, rather than the County's, property; (3) to assure that new residences would be served by the new public road; (4) to facilitate the County's overall plan to cluster homes away from farm land; and (5) to avoid having to provide alternative access to the Greens' property by building ½ mile of additional road at the County's expense.

4. Between the initiation of this lawsuit and the Association's appeal, a new County Board of Commissioners was elected.

election on the ground that a taking had already occurred.[5] As a result, the County elected not to participate further in the appeal, and the Greens were permitted to intervene.

The Court of Special Appeals reversed, holding that the condemnation was not for a "public use" and was not "necessary." *High Ridge v. County Comm.*, 105 Md.App. 423, 660 A.2d 951 (1995). The intermediate appellate court explained (105 Md.App. at 436, 660 A.2d at 957):

> "In neither the legislative proceedings authorizing the filing of the Complaint for Condemnation nor the Complaint itself does the County, other than by a bald claim of public purpose, proffer any public purpose objectives or necessity or proffer any *evidence* of any such purpose or necessity to justify condemnation of the private pedestrian path located in High Ridge Estates." (Emphasis in original).

The court continued as follows (105 Md.App. at 437–438, 660 A.2d at 958):

> "The Commissioners' decision to initiate condemnation in the case at bar was clearly and solely made to enhance the private interests of the Greens. In essence, the County was using its powers of eminent domain to give [the] Green[s] access to and through appellant's private property. That is an inappropriate use of the condemnation power. The County's action was thus oppressive, arbitrary and unreasonable. The trial court erred in upholding the condemnation. On the basis of the record in the case *sub judice*, no rational inferences of a genuine public purpose are possible."

The Greens filed a petition for a writ of certiorari, challenging the holdings that the condemnation was not for a public use and that there was no necessity for the taking. The High Ridge Association filed a cross-petition for a writ of certiorari, arguing that the Court of Special Appeals erred in permitting

---

5. The Court of Special Appeals' order rejecting the County's election has not been challenged in this Court. Therefore, the issue is not before us.

the Greens to intervene. This Court granted the Greens' petition and denied the Association's cross-petition. *Green v. High Ridge Association,* 341 Md. 30, 668 A.2d 422 (1995).

### B. *No. 126, Baltimore County v. Godlewski*

The subject parcel of land, 30 foot wide and 144 foot deep, is located in the community of Miller's Island in southeast Baltimore County.[6] The parcel is one of 12 road ends terminating at the waters of Hawk Cove at the mouth of Back River. This strip of land is at the end of 4th Street and is adjacent to property owned by Allan and Sharon Godlewski. On March 21, 1991, Rose Sapperstein and the White Eagle Polish–American Building & Loan Association of Baltimore City, Inc., deeded the 4th Street road end to the Godlewskis. Baltimore County also maintains an easement in this parcel "to lay, construct and maintain sewers, drains, water pipes and other municipal utilities and services," granted to it by Sapperstein on November 16, 1984.

Fearing the termination of their access to Hawk Cove after the sale of the 4th Street road end, local homeowners petitioned county officials for the condemnation of all 12 road ends "to preserve access to Hawk Cove by residents for emergency purposes, for flood control and for recreational use." Thereafter, the County agreed to the condemnation of the road ends between 1st and 12th Streets.

The County then filed in the Circuit Court for Baltimore County a petition for condemnation of the 4th Street road

---

**6.** Although the community is called Miller's Island (or sometimes Millers Island), it is not an island. Instead, it is a peninsula bounded on three sides by Back River, Hawk Cove, and the Chesapeake Bay. There was an actual island nearby which was called "Miller Island" and was uninhabited. Miller Island, along with Hart Island and Pleasure Island, made up a string of three islands separating Hawk Cove from the Chesapeake Bay. The area between Miller Island and Hart Island has been filled in by the State, and today they constitute a single island called "Hart Miller Island."

end.[7] At the trial, the Director of Recreation and Parks for Baltimore County testified that the property was being condemned (1) to insure that residents of Miller's Island had access to Hawk Cove, (2) to insure that County emergency equipment could access the water through the road end, and (3) to insure the free flow of storm water to the Cove. Other testimony showed that residents frequently accessed Hawk Cove over the 4th Street road end.

Following the trial, the circuit court denied the petition, holding that the condemnation was not necessary and was not for a public purpose. The court rejected all three public purposes asserted by the County to justify the condemnation. The court reasoned that alternative access routes existed throughout Miller's Island for emergency relief and that the County maintained an easement across the road end for flood and drainage control. Furthermore, the court relied on the fact that there were existing public recreational areas near the community of Miller's Island, stating: "[We] don't live in a perfect world where you can walk out your door and do whatever you want. . . . We have to drive to go to a ball field or to a basketball court or to go fishing."

Baltimore County filed a timely notice of appeal, and, prior to argument in the Court of Special Appeals, this Court issued a writ of certiorari.

## II.

The right of a Maryland governmental body to exercise eminent domain is limited by Article III, § 40, of the Maryland Constitution, which requires that the taking of private property be "for public use" and that "just compensation be paid." In addition, the statutory provisions applicable to these cases expressly provide that the property be "needed" or "required."

---

7. There were similar petitions filed in the circuit court to condemn the other 11 road ends. The record, however, does not reveal the status of those petitions, nor are those petitions directly involved in this case.

## A.

■ This Court has pointed out that "[n]o satisfactory single clear-cut rule regarding what is a public use, which can decide all cases, has yet been formulated." *Pr. George's Co. v. Collington Crossroads, Inc.,* 275 Md. 171, 181, 339 A.2d 278, 284 (1975). While the decision of whether a particular use is "public" is ultimately for the judiciary, a court will give weight to the determinations of the legislative and executive branches of government. *City Council of Baltimore v. Chertkof,* 293 Md. 32, 42–43, 441 A.2d 1044, 1051 (1982); *Pr. George's Co. v. Collington Crossroads, Inc., supra,* 275 Md. at 190–191, 339 A.2d at 288–289; *Boswell v. Prince George's Co.,* 273 Md. 522, 529, 330 A.2d 663, 667–668 (1975); *Herzinger v. City Council of Baltimore,* 203 Md. 49, 62–63, 98 A.2d 87, 93 (1953); *Riden v. Phila., B. & W.R.R. Co.,* 182 Md. 336, 342–343, 35 A.2d 99, 102 (1943).

Moreover, we have held that "public use" is not limited to circumstances where "the public . . . literally or physically [is] permitted to use the property taken by eminent domain." *Pr. George's Co. v. Collington Crossroads, Inc., supra,* 275 Md. at 182, 339 A.2d at 284. *See, e.g., Williams v. Anne Arundel County,* 334 Md. 109, 120–121, 638 A.2d 74, 79 (1994) ("The decisions of this Court furnish multiple illustrations of . . . public purposes despite the fact that there was also a benefit to privately owned property from which the public at large could rightfully be excluded"); *City of Baltimore v. Chertkof, supra,* 293 Md. at 42, 441 A.2d at 1050 ("condemnation . . . for urban renewal purposes . . . embodies a broad concept of public use, not limited to actual use by the public, but rather to use benefitting the public"); *Herzinger v. City of Baltimore, supra,* 203 Md. at 60–61, 98 A.2d at 92; *Flaccomio v. City Council of Baltimore,* 194 Md. 275, 278–280, 71 A.2d 12, 13–14 (1950); *Marchant v. Baltimore,* 146 Md. 513, 521, 126 A. 884, 887 (1924) ("The public character of the use to which the [properties] are devoted is not affected by the fact that they may not all be made available for the indiscriminate use of the public"); *Pitznogle v. Western Md. R.R. Co.,* 119 Md. 673, 87 A. 917 (1913); *M. & C.C. of Baltimore v. Brengle,* 116 Md. 342,

348–349, 81 A. 677, 680 (1911); *N.Y. Mining Co. v. Midland Co.,* 99 Md. 506, 514–516, 58 A. 217, 221 (1904); *New Central Coal Co. v. George's Creek Coal & Iron Co.,* 37 Md. 537, 561 (1873) (condemnation of land for a privately owned railroad spur for the benefit of a private mining business constituted a public use, as "[i]t has ... been the settled policy of the State, for many years past, to stimulate [private mining] enterprise ... for the purpose of developing the large mineral resources in the western portion of the State").

■ Although the meaning of "public use" under Article III, § 40, of the Constitution is broader than literal use by the members of the public, and while actual use of the condemned property by the general public is not necessary, nonetheless, when the general public is entitled to physically use the condemned property, the use is "public" for purposes of the constitutional provision.

Thus, in *Riden v. Phila., B. & W.R.R. Co., supra,* 182 Md. at 342, 35 A.2d at 102, in holding that the condemnation of private property to construct a branch railroad line designed to serve only the Bowie Race Track constituted a "public use," this Court emphasized:

"In this State we have held that the words 'public use,' as written in our Constitution, mean use by the public."

Later the court reiterated (182 Md. at 345, 35 A.2d at 103):

"Since the branch line to Bowie Race Track will presumably be open to the general public, we hold that it is for public use, and that condemnation of land for that purpose does not violate the Declaration of Rights and the Constitution of Maryland or the Fourteenth Amendment of the Federal Constitution."

The Court in *Riden* also made it clear that the critical factor is the general public's *entitlement* to use the property, and not whether a large segment of the general public would likely use the property (182 Md. at 344, 35 A.2d at 103), saying: "If the branch line ... is open to the public ..., the number of people who will actually use it is immaterial." *See also, e.g., Webster v. Susquehanna Pole Line Co.,* 112 Md. 416, 426, 76 A. 254,

257 (1910) (" 'the test whether a use is public or not, is whether a public trust is imposed on the property; whether the public has a legal right to the use, which cannot be gainsaid or denied, or withdrawn' "); *Arnsperger v. Crawford,* 101 Md. 247, 253, 61 A. 413, 415 (1905); *N.Y. Mining Co. v. Midland Co., supra,* 99 Md. at 514, 58 A. at 221.

██ Consequently, the condemnation of private property for a public highway, street, or road constitutes a "public use" within the meaning of Article III, § 40. Since the members of the general public are entitled to use a public highway, street, or road, this Court has, without exception, held that condemnation for such purposes is constitutionally authorized.

Recently, in *Anne Arundel County v. Burnopp, supra,* 300 Md. 343, 478 A.2d 315, Anne Arundel County sought to condemn a private road which served a relatively few homes and led to a dead end. The circuit court in *Burnopp,* like the Court of Special Appeals in the present *Green* case, held that the condemnation was not for a public purpose because there was no evidence of "a public need for this," because the only reason was to serve a relatively few properties, and because, in the court's judgment, these properties were adequately served by an existing private road. This Court reversed, stating in an opinion by Judge Marvin Smith (300 Md. at 350, 478 A.2d at 319):

"There can be no dispute of the fact that condemnation of private property for a public highway or road is a proper public use. *See, e.g., Bond v. M. & C.C. of Baltimore,* 116 Md. 683, 82 A. 978 (1911). A determination that such is a public use is not affected by the fact that although the public may have the right to use a street it seldom does."

The Court in *Burnopp* went on to quote with approval 2A Nichols, *The Law of Eminent Domain,* § 7.22[1] (Sackman ed. 1983), that

" 'it is no legal objection that a proposed highway will be a *cul de sac,* or that it will lead to the residence or place of business of but one individual, for the public may desire to visit or do business with him. If a road is to be open for

public travel the purpose for which the public may wish to travel is not material, and land may be taken by eminent domain for a road which is intended solely for driving for pleasure and recreation or to furnish a view of beautiful natural scenery. Streets are frequently laid out for the purpose of opening up private land, but if a street is to be open to public travel it is well settled that it is for the public use, although it is of especial convenience or advantage to certain individuals, or even if its sole or principal object is to enhance the value of the land through which it passes. . . . ' "

The Court of Special Appeals' opinion in the instant *Green* case relied chiefly on that court's view that the public road would simply "enhance the private interests of the Greens" (105 Md.App. at 437, 660 A.2d at 958) and would only benefit their development. This type of argument was answered long ago in *M. & C.C. of Balt. v. Brengle, supra,* 116 Md. at 348–349, 81 A. at 678, in which Chief Judge Boyd for the Court stated:

"It can not be said that, because some parties may receive more direct benefits than the public at large . . ., it is therefore for a private and not a public use. A street opened, graded and paved through a piece of land may enable the owner to sell lots for many times their former value, and it sometimes results in making a few persons wealthy; but it can not be said that because the opening of the street may have such an effect it is for a private and not a public use. It is perhaps rare for an application to be made to the county commissioners of a county to open, alter or close a road, excepting when one or more persons are specially interested in having it done."

In *Dobler v. Baltimore,* 151 Md. 154, 165, 134 A. 201, 205 (1926), Judge W. Mitchell Digges for the Court explained that

"it is clear that the regrading and paving of Clement Street . . . constituted a public use; that is to say, it was done for the purpose of the public's using it. All of the public have a perfect and undeniable right to resort to the use of this street whenever their business, convenience, or pleasure

may require;.... The fact that the defendant American Sugar Refining Company, or any other person or corporation in that immediate vicinity, derive a greater benefit from the improvement than may be derived by the public in general, in no way changes the rule or makes it any the less a public use."

The Court further recognized (151 Md. at 166, 134 A. at 205–206) that

"it is usual for the authorities, both in the city and counties, to open, close, grade and improve streets and highways as a result of the request, and in many instances the insistence, of parties either residing or owning property in the neighborhood in which the road may be opened or closed. If it were held under such circumstances that any action by the authorities in response to such request constituted the improvement [of] a private rather than a public use, and was therefore illegal, betterments along this line would be very greatly minimized. It follows that if the American Sugar Refining Company, who owned or proposed to acquire property along Clement Street, requested the city authorities to take the action which is shown in this case, or even made such action a condition to its establishment of a branch factory in Baltimore City, it does not render such action a private, as contra distinguished from a public, use."

*See also, e.g., Boswell v. Prince George's Co., supra,* 273 Md. at 525, 528–529, 330 A.2d at 665, 667–668 (condemnation for a road could not be defeated on the ground that the project was designed "to satisfy a local pressure group"); *State Roads Comm. v. Franklin,* 201 Md. 549, 561, 95 A.2d 99, 105 (1953) ("It might well be that the construction of this 'expressway' to be completed in the distant future will inflict hardships upon many individuals. That is a legislative problem, not judicial"); *Murphy v. State Roads Comm'n,* 159 Md. 7, 149 A. 566 (1930); *Bond v. M. & C.C. of Baltimore,* 116 Md. 683, 689, 82 A. 978, 981 (1911) (where property is condemned for a public highway, "there can be no possible or serious dispute that the use ... is for a public use"); *Baltimore v. Clunet,* 23 Md. 449 (1865); *State v. Graves,* 19 Md. 351, 369 (1863) ("The act of opening,

widening and closing streets, is an exercise of the right of *eminent domain");* 2A *Nichols on Eminent Domain,* § 7.03[4] (3d ed. 1997) ("a public highway is unquestionably for a public use and may be established by eminent domain even if one person uses it, so long as that person uses it as a member of the public").

The principle that a public road or street constitutes a "public use" within the meaning of Article III, § 40, is underscored by the cases in this Court indicating that a particular use was not public. The only circumstance in which this Court has taken the position that a governmental condemnation was not for a public use has involved the condemnation of a public easement in a road and a closing of that road for the sole benefit of one particular adjacent property owner, resulting in other property owners and the general public being deprived of their pre-existing entitlement to use the road. *Van Witson v. Gutman,* 79 Md. 405, 29 A. 608 (1894). *See also Perellis v. M. & C.C. of Balto.,* 190 Md. 86, 57 A.2d 341 (1948); *Huebschmann v. Grand Company,* 166 Md. 615, 172 A. 227 (1934); *Arnsperger v. Crawford, supra,* 101 Md. 247, 61 A. 413; *Townsend, Grace & Co. v. Epstein,* 93 Md. 537, 49 A. 629 (1901). It is precisely because other landowners and the general public "lose their easement to the closed portion" (*Van Witsen v. Gutman, supra,* 79 Md. at 411, 29 A. at 610) or suffer "impairment of the existing means of access" (*Perellis v. M. & C.C. of Balto., supra,* 190 Md. at 95, 57 A.2d at 345), for the sole benefit of one particular property owner, that the governmental action was deemed to be for a private purpose. These cases demonstrate that, with regard to streets and roads, access by the general public is "public use" for purposes of the constitutional provision.[8]

_____

8. Although it is clear from the language of Article III, § 40, and the language in numerous opinions by this Court, that the condemnation of property must be for a "public" use, it may be noteworthy that there appear to be no direct condemnation cases in this Court in which the Court has actually held that a particular governmental condemnation was for a "private" use. While the *Van Witson* case represented an actual holding by this Court, it was not in a condemnation case. The

In both of the cases at bar, the condemnations were for public roads. Members of the general public would be entitled to use the roads. Accordingly, the condemnations were for "public" uses within the meaning of Article III, § 40, of the Maryland Constitution.

## B.

As earlier mentioned, the Court of Special Appeals in the *Green* case and the circuit court in the *Godlewski* case also held that there was no necessity for the condemnations.

This Court has held, however, that the question of whether there is a "necessity" for a particular condemnation is primarily for the legislative and/or executive branches of government. *See, e.g., County Comm'rs v. Schrodel,* 320 Md. 202, 216–217, 577 A.2d 39, 46 (1990); *Anne Arundel County v. Burnopp, supra,* 300 Md. at 348–349, 478 A.2d at 318–319; *Wash. Suburban San. Comm. v. Santorios,* 234 Md. 342, 346, 199 A.2d 206, 208 (1964) (" 'The necessity is for the condemnor and not for the courts to decide,' " quoting with approval 1A *Nichols On Eminent Domain,* § 4.11[3] (3d ed.)); *State Roads Comm. v. Franklin, supra,* 201 Md. at 557, 95 A.2d at 103; *Murphy v. State Roads Comm'n, supra,* 159 Md. at 15, 149 A. at 570 ("Ordinarily the question of whether a proposed highway is required by public necessity is legislative rather than judicial").

---

condemnation case had apparently been terminated, and the case before this Court was an equitable proceeding by those formerly entitled to use the road for an injunction against the private beneficiary of the condemnation. The *Perellis* case was a declaratory judgment action challenging on their face two ordinances authorizing condemnation. Both *Huebschmann* and *Townsend* were equitable actions to remove obstructions which the defendants had placed in public streets allegedly pursuant to municipal permission; neither case involved a condemnation proceeding or an ordinance specifically authorizing a condemnation proceeding. *Amsperger* involved a statutory circuit court proceeding challenging county action granting a private road to the defendant-appellant; this Court dismissed the appeal on the ground that there was no statutory authorization for an appeal from the circuit court's judgment.

 The determination by a condemning authority that a particular taking is "necessary" will not be set aside by the courts unless the condemnor's decision "is so oppressive, arbitrary or unreasonable as to suggest bad faith," *Anne Arundel County v. Burnopp, supra,* 300 Md. at 349, 478 A.2d at 318. Moreover, the burden is upon those challenging the condemnation to establish such bad faith, *County Comm'rs v. Schrodel, supra,* 320 Md. at 217, 577 A.2d at 46. No such showing was made in either of the present cases.

It is clear that Carroll County and Baltimore County were each entitled to condemn the subject parcels for public roads.

*IN No. 125, THE JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED, AND THE CASE IS REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*

*IN No. 126, THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS REVERSED, AND THE CASE IS REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENTS.*